UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM H. MELENDEZ,

                Plaintiff,

v.                                  Case No. 3:20-cv-1023-BJD-JBT

RICKY DIXON, et al.,

                Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff, William Melendez, an inmate of the Florida penal system, is proceeding, through counsel, on a second amended complaint for the alleged violation of his civil rights (Doc. 134; Sec. Am. Compl.). Before the Court are two motions to dismiss filed by the nineteen "rank-and-file correctional officer" Defendants: one by seventeen officers, including Defendant Van Allen (Doc. 159; Van Allen Mot.); and one by the other two officers, including Defendant Knott (Doc. 200; Knott Mot.). Plaintiff opposes the motions (Doc. 167; Pl. Van Allen Resp.) (Doc. 208; Pl. Knott Resp.).[1]

---

[1] The other Defendants have answered Plaintiff's operative complaint (Doc. 161). Plaintiff's claims against those Defendants have been fully detailed

## II. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Gill as Next Friend of K.C.R. v. Judd, 941 F.3d 504, 511 (11th Cir. 2019) (quoting Iqbal, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from

---

in orders addressing Plaintiff's emergency motions for injunctive relief (Docs. 203, 253) and in the Eleventh Circuit's April 15, 2022 opinion (Doc. 283).

conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff. <u>Iqbal</u>, 556 U.S. at 678.

The purpose of the federal pleading rules is to ensure a plaintiff presents his "claims discretely and succinctly, so that[ ] his adversary can discern what he is claiming and frame a responsive pleading." <u>Barmapov v. Amuial</u>, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting <u>Weiland v. Palm Bch. Cnty. Sheriff's Off.</u>, 792 F.3d 1313, 1320 (11th Cir. 2015)).

## III. Complaint Allegations

Plaintiff's claims for damages and injunctive relief stem from his extended placement in isolation, or close management (CM) status,[2] while at Florida State Prison (FSP) and New River Correctional Institution (New River). Sec. Am. Compl. ¶ 1. Plaintiff alleges he was isolated for years and "intentionally deprived . . . of basic human needs such as human contact, social interaction, physical exercise," and appropriate mental health care. <u>Id.</u> ¶ 5.

---

[2] "Close management" is defined as "the separation of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, when the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla. Admin. Code r. 33-601.800(1)(a).

As relevant to the motions under review, Plaintiff alleges he "was not allowed outdoor recreation in the entirety of his isolation," contrary to the relevant provision of the Florida Administrative Code (FAC), which mandates that prisoners on CM should receive up to six hours of recreation outside of their cell per week. Id. ¶¶ 40, 41 (citing Fla. Admin. Code r. 33-601.800(10)(m)). Plaintiff also alleges he was denied the minimum number of weekly showers provided for under the FAC. Id. ¶ 43. Plaintiff contends that the extended isolation caused a decline in both his mental and physical health. Id. ¶ 10. He also alleges he was denied "the basic and fundamental rights of free speech and due process" and was subjected to improper uses of force by prison guards. Id. ¶¶ 6, 8.

## IV. Motions & Responses

The officer Defendants, in their separate but nearly identical motions, argue the second amended complaint is a "shotgun pleading," or, alternatively, they are entitled to qualified immunity on the conditions-of-confinement claim (Count II.D).[3] Van Allen Mot. at 4, 14; Knott Mot. at 3, 13. In response, Plaintiff contends he resolved the problems identified by the Court in its order finding that his prior complaint was a "shotgun pleading," and Defendants are not

---

[3] The Court granted in part Defendants' motions to dismiss the amended complaint finding it was a shotgun pleading in that some claims were unclear. See Order (Doc. 133).

4

entitled to qualified immunity because he alleges Defendants violated his constitutional rights under clearly established law. Pl. Van Allen Resp. at 2, 13; Pl. Knott Resp. at 2, 11.

## V. Discussion & Conclusions

Before addressing the discrete claims Defendants contend are deficient, the Court finds Plaintiff's second amended complaint is not a "shotgun pleading." Plaintiff has clarified the allegations supporting his separate claims in a way that sufficiently puts the officer Defendants on notice of the claims against them. See Barmapov, 986 F.3d at 1324. Plaintiff alleges the following claims against the officer Defendants: retaliation against Folsom and Hall (Count I.A); retaliation against Bryant, Gwara, Moreland, Oliva, and E. Williams (Count I.B); unconstitutional conditions of confinement against Van Allen, Brown, Folsom, Hall, Philbert, Geiger, and Knott (Count II.D); excessive force against Van Allen and Geiger (Count III.D); excessive force against Atteberry, Brown, Chandler, Folsom, Hall, Nosbisch, Philbert, and C. Williams (Count III.E); excessive force against Geiger, Knott, Webb, Willis, and Woods (Count III.F); excessive force against Bryant, Gwara, Moreland, Oliva, and E.

Williams (Count III.G); and a denial of due process against Van Allen, Brown, and Knott (Count IV.D).[4]

With respect to all Counts except one (Count I.A), Defendants argue Plaintiff does not state a plausible claim because there are "scant allegations concerning" some of the Defendants, or Plaintiff does not clearly allege which Defendants engaged in which conduct. Van Allen Mot. at 7-12; Knott Mot. at 7-11. They also contend they are entitled to qualified immunity on Count II.D. Van Allen Mot. at 14; Knott Mot. at 13.

### i.  Count I.B: Retaliation Claim Against Bryant, Gwara, Moreland, Oliva, and E. Williams

In Count I.B, Plaintiff alleges he was beaten in retaliation for filing a grievance against Defendant Oliva at New River. Sec. Am. Compl. ¶¶ 134, 138. The assault occurred on July 28, 2020, after Plaintiff engaged in back-to-back acts of self-mutilation, which required him to be sent to an outside hospital twice and to the prison medical unit once. Id. ¶¶ 106-08, 110-11. Plaintiff's first act of self-mutilation occurred on July 26, 2020, when he was in administrative confinement for an allegedly unknown reason. Id. ¶¶ 104-06. Plaintiff explains that he was placed in administrative confinement seven days after having

---

[4] Plaintiff names some Defendants in more than one count for the same violation (for example, excessive force). He separates his claims because the conduct giving rise to those separate claims occurred on different dates.

written a grievance complaining about Defendant Oliva. <u>Id.</u> ¶¶ 102, 104. Plaintiff submitted a second grievance complaining about Defendant Oliva on July 14, 2020. <u>Id.</u> ¶ 104. Inside his administrative confinement cell, Plaintiff inserted a nail into his arm, around which he had tied a tourniquet. <u>Id.</u> ¶ 106. He had to be taken to the hospital because he lost so much blood. <u>Id.</u>

After returning to New River, Plaintiff engaged in a second act of self-mutilation, triggered by hearing voices telling him to do so. <u>Id.</u> ¶ 107. He was sent to the hospital once again. <u>Id.</u> On July 28, 2020, at New River, Plaintiff again mutilated himself, allegedly in response to threats from officers, including Defendant Oliva. <u>Id.</u> ¶ 108. Defendants Bryant and Oliva directed Plaintiff's extraction from his cell to be taken to the medical unit. <u>Id.</u> ¶ 110. According to Plaintiff, once inside the medical unit, Defendants Gwara, Moreland, and E. Williams "beat [him] without cause while he was cuffed and shackled." <u>Id.</u> ¶ 111. He alleges and shows through a picture that the beating caused severe injuries to his face, including swelling and bruising. <u>Id.</u> ¶¶ 112-13. Plaintiff alleges the July 28, 2020 assault by Defendants Gwara, Moreland, and E. Williams was done at the direction of Defendants Bryant and Oliva, "in retaliation for his grievances and complaints against Defendant Oliva." <u>Id.</u> ¶¶ 134, 138-39.

The First Amendment protects a prisoner's right to engage in protected speech. O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011). Because grievances are protected speech, "[a] prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of [the prisoner] having filed a grievance concerning the conditions of his imprisonment.'" Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (quoting Wildberger v. Bracknell, 896 F.2d 1467, 1468 (11th Cir. 1989)). To state an actionable retaliation claim, a plaintiff-prisoner must allege the following:

> (1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance].

O'Bryant, 637 F.3d at 1212 (first alteration added). "The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech. The penalty need not rise to the level of a separate constitutional violation." Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989). In the absence of direct evidence showing a causal connection, a plaintiff may establish that element by showing a close temporal connection between the protected activity and the alleged retaliatory conduct. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) ("A 'close temporal proximity' between the protected expression and an

8

adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case [in an employment context].”); Stallworth v. Tyson, 578 F. App’x 948, 951 (11th Cir. 2014) (“[C]lose temporal proximity between protected speech and an adverse action may serve as circumstantial evidence of causation in a prisoner’s First Amendment retaliation claim.”).

Plaintiff alleges he filed grievances against Defendant Oliva on July 4 and July 14, 2020, and Defendant Oliva, on July 28, 2020, directed officers to beat him, and those officers beat him so badly that most of his face was swollen or bruised. Accepting these allegations as true, and based on the temporal proximity between the speech and the alleged retaliatory conduct, Plaintiff states a plausible retaliation claim against Defendant Oliva. See O’Bryant, 637 F.3d at 1212. See also Stallworth, 578 F. App’x at 951.

However, Plaintiff fails to state a plausible retaliation claim against Defendants Bryant, Gwara, Moreland, and E. Williams, related to the July 28, 2020 alleged assault. Plaintiff does not allege he filed grievances complaining about Defendants Bryant, Gwara, Moreland, or E. Williams, nor does he allege these Defendants knew about the grievances he filed against Defendant Oliva or had a reason to retaliate against him for having done so. As such, Plaintiff alleges no facts demonstrating a causal connection between his protected speech (grievance-writing) and the actions of Defendants Bryant, Gwara,

9

Moreland, and E. Williams. Plaintiff's bare assertion that Defendants Bryant, Gwara, Moreland, and E. Williams retaliated against him because he filed a grievance against a different officer amounts to no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," which does not satisfy the federal pleading standard. Iqbal, 556 U.S. at 678. Accordingly, the retaliation claim against Defendants Bryant, Gwara, Moreland, and E. Williams is due to be dismissed.

### ii.     Count II.D: Conditions-of-Confinement Claim Against Defendants Van Allen, Brown, Folsom, Hall, Philbert, Geiger, and Knott

As it relates to Plaintiff's conditions-of-confinement claim, Plaintiff alleges he was assigned to CMI status on September 13, 2016, where he remained until June 17, 2019. Sec. Am. Compl. ¶¶ 61-62, 210. During his extended time in CMI status, Plaintiff was held in a cell "measuring only six steps from front to back" with almost no natural light, no air conditioning, and a steel door. The cell lights and toilet were controlled by prison staff. Id. ¶¶ 63-65. To have his toilet flushed or request a shower or recreation time, Plaintiff had to hold up a sign in the window of his cell door, though Plaintiff alleges, "Correctional officers routinely ignored [his] requests." Id. Plaintiff also asserts officers routinely found him guilty of "trivial and pretextual disciplinary offenses that added months to his isolation." Id. ¶ 67.

Plaintiff alleges Defendants Hall, Brown, Folsom, Philbert, and Geiger had "supervisory responsibility over the segregation dormitories where [he] was housed," and, as such, they were responsible for his living conditions and for "imposing severe restrictions . . . including depriving [him] of outdoor recreation, showers, and phone calls."[5] Id. ¶¶ 213-14. He alleges Defendants Van Allen and Knott were correctional officers who were "responsible for imposing severe restrictions on [him]," and all Defendants acted pursuant to "practices and policies" that violated his constitutional rights. Id. ¶¶ 215-19.

In explanation, Plaintiff asserts Defendants Van Allen, Brown, Folsom, Hall, Philbert, Geiger, and Knott "used excuses to deny [him] out-of-cell recreation for things like having his towel in the wrong place or having his fingernails too long," or they falsely reported that he had declined to participate in recreation. Id. ¶ 40. Plaintiff asserts these Defendants also routinely denied him showers. Id. ¶ 43. Plaintiff alleges he "was not allowed outdoor recreation in the entirety of his isolation on CMI," and he "was forced to go weeks without showers, [which caused him to] develop[] sores on his legs that led to a staph infection." Id. ¶¶ 41, 43.

---

[5] While Plaintiff mentions "phone calls" in Count II.D, see Sec. Am. Compl. ¶¶ 214-15, nowhere does he allege the Defendants named in Count II.D denied him such a privilege.

Prison conditions need not be comfortable to satisfy Eighth Amendment standards, but they must not "involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). A prisoner demonstrates an Eighth Amendment violation when the conditions of his confinement—either alone or in combination—are sufficiently extreme as to pose an "unreasonable risk of serious damage to his future health or safety." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)); Wilson v. Seiter, 501 U.S. 294, 304 (1991). A prisoner need not wait until tragedy strikes to have a valid or ripe Eighth Amendment claim. Wilson, 501 U.S. at 304. In fact, the Eighth Amendment's proscription against cruel and unusual punishments has been interpreted "in a flexible and dynamic manner" and protects prisoners from "the unnecessary and wanton infliction of pain," or those "totally without penological justification." Rhodes, 452 U.S. at 345-46. As such, it is enough for a plaintiff to have alleged facts that make plausible a deprivation of "the minimal civilized measure of life's necessities." Crosby, 379 F.3d at 1289 (alterations in original).

An Eighth Amendment claim also has a subjective component. See Swain v. Junior, 958 F.3d 1081, 1087 (11th Cir. 2020) (citing Farmer v. Brennan, 511 U.S. 825, 846 (1994)). To hold a prison official responsible for

cruel and unusual prison conditions, a prisoner must demonstrate the prison official "acted with a sufficiently culpable state of mind with regard to the condition" or conditions. <u>Crosby</u>, 379 F.3d at 1289 (quoting in part <u>Hudson</u>, 503 U.S. at 8).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Id.</u> (quoting with alteration <u>Farmer</u>, 511 U.S. at 837). "Whether [a] prison official[] had the requisite awareness of the risk 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" <u>Goodman v. Kimbrough</u>, 718 F.3d 1325, 1332 (11th Cir. 2013) (quoting <u>Farmer</u>, 511 U.S. at 842).

Defendants contend Plaintiff fails to specify "how each named Defendant was responsible for or involved in Plaintiff's classification status." Van Allen Mot. at 7; Knott Mot. at 7. But in Count II.D, Plaintiff does not fault Defendants Van Allen, Brown, Folsom, Hall, Philbert, Geiger, or Knott for assigning him to or keeping him on CMI status; Plaintiff faults these

Defendants for depriving him of "the minimal civilized measure of life's necessities" during his extended placement on CMI status. See Crosby, 379 F.3d at 1289. Plaintiff alleges Defendants conjured excuses to arbitrarily deny him recreation time and showers—on more than one or a few occasions—knowing that he had spent an excessive amount of time on CMI status. Sec. Am. Compl. ¶¶ 40, 43 (incorporated by reference in Count II.D). While Plaintiff does not specify dates and times of the alleged deprivations, he alleges Defendants Van Allen, Brown, Folsom, Hall, Philbert, Geiger, and Knott denied him recreation so often that he had "not experienced a cool breeze or sunshine . . . for over four years" and denied him showers so often that he "developed sores on his legs that led to a staph infection." Id. ¶¶ 41, 43. These allegations are enough to satisfy the objective component of an Eighth Amendment claim. See, e.g., Brooks v. Warden, 800 F.3d 1295, 1304 (11th Cir. 2015) (acknowledging the "deprivation of basic elements of hygiene," even over a period of days, can violate the Eighth Amendment). See also Crosby, 379 F.3d at 1295 (noting the severity and duration of prison conditions inform an Eighth Amendment analysis).

The subjective component is a closer call. However, Plaintiff alleges enough facts to permit the reasonable inference that Defendants Van Allen, Brown, Folsom, Hall, Philbert, Geiger, and Knott knew of a substantial risk of

harm to Plaintiff's health or safety and disregarded that risk by more than negligence. For instance, Plaintiff alleges these Defendants were officers in Plaintiff's CM dorm. Sec. Am. Compl. ¶ 23. As such, they knew Plaintiff had been held in isolative conditions for an extended period and knew he was entitled to certain limited privileges as provided for in the FAC.[6] Knowing that Plaintiff received minimal out-of-cell opportunities because of his restrictive housing status, Defendants Van Allen, Brown, Folsom, Hall, Philbert, Geiger, and Knott allegedly denied Plaintiff the minimal number of showers or outdoor recreation time to which he was entitled, for "no legitimate penological purpose." Id. ¶¶ 40-41, 43, 218.

Additionally, Plaintiff alleges these Defendants knew of his history of mental illness and acts of self-harm, and knew of the well-documented, "profound effects on people subjected to extended periods in isolation." Id. ¶¶ 2-3, 12. Plaintiff's allegations, accepted as true, permit the reasonable

---

[6] Inmates on CM status are entitled to six hours per week of outdoor exercise, with restrictions permissible for major rule violations, and they are entitled to three showers per week. Fla. Admin. Code r. 33-601.800(10)(e), (m). Absent authorized restrictions, which may result in the temporary denial of outside exercise, these privileges are mandatory, not discretionary. With respect to exercise, the Code provides, "[A]n exercise schedule shall be implemented to ensure a minimum of six hours per week (two hours three days per week) of exercise out of doors." Fla. Admin. Code r. 33-601.800(10)(m). With respect to hygiene, the Code provides, "At a minimum, each inmate in CM shall shower three times per week and on days that the inmate works." Fla. Admin. Code r. 33-601.800(10)(e).

inference Defendants Van Allen, Brown, Folsom, Hall, Philbert, Geiger, and Knott knew Plaintiff was at substantial risk of serious harm when they routinely denied him access to showers and outdoor exercise knowing of his restrictive housing and mental health history.

In short, Plaintiff does enough to put Defendants on notice of the facts supporting his conditions-of-confinement claim against them. Accordingly, the claim may proceed at this juncture.

### iii.   Count IV.D: Due Process Claim Against Defendants Van Allen, Brown, and Knott

In County IV.D, Plaintiff alleges Defendants Van Allen, Brown, and Knott "deprived [him] of his right to be free from solitary confinement without due process of law" by preventing him from attending ICT hearings.[7] Id. ¶¶ 70, 90, 315. Additionally, Plaintiff alleges Defendant Brown placed him on strip

---

[7] The Institutional Classification Team, or ICT, is to conduct regular reviews of an inmate's CM status. Fla. Admin. Code r. 33-601.800(16)(a). Once a week for the first sixty days and then once every thirty days thereafter, an ICT member must review each inmate on CM status, with the purpose being "to reduce the inmate's status to the lowest management level possible or return the inmate to general population as soon as the facts of the case indicate that this can be done safely." Id. After an inmate is on CM status for six months, "the classification officer shall interview the inmate and shall prepare a formal assessment and evaluation." Fla. Admin. Code r. 33-601.800(16)(c). The ICT then reviews the classification supervisor's recommendation, along with other materials, including the inmate's mental health evaluations. Fla. Admin. Code r. 33-601.800(16)(d). The inmate shall be present for the ICT review. Id.

status "without affording [him] notice and a chance to be heard." Id. ¶ 316.

Defendants argue Plaintiff "lumps" Defendants together in this Count "with

no specificity of what is being alleged against each" Defendant. Van Allen Mot.

at 12; Knott Mot. at 9. On the contrary, Plaintiff alleges all three identified

Defendants prevented Plaintiff from attending ICT hearings on at least two

dates, September 8, 2017, and March 1, 2018, and Defendant Brown placed

him on strip status without due process. Sec. Am. Compl. ¶¶ 70, 90, 315-16.

Such allegations sufficiently put Defendants on notice of the claim against

them such that they can frame a responsive pleading by admitting or denying

the allegations.

### iv.   Counts III.D through III.G: Excessive Force Claims Against Defendants Van Allen, Geiger, Atteberry, Brown, Chandler, Folsom, Hall, Nosbisch, Philbert, C. Williams, Knott, Webb, Willis, Woods, Bryant, Gwara, Moreland, Oliva, and E. Williams

Plaintiff alleges that, while on CM status, he was "systematically abused

by [officers]." Id. ¶¶ 5, 8-9. The first alleged assault occurred on October 3,

2017. Id. ¶ 72. Plaintiff alleges Defendant Van Allen slammed his hand in his

cell door food flap, crushing his fingers, and, to conceal the extent of his injury,

Defendants Van Allen and Geiger refused to take him for medical treatment.

Id. ¶¶ 73-74. Plaintiff alleges Defendant Van Allen "acted maliciously and

sadistically with the intent to cause harm," and Defendant Geiger, who was present, failed to intervene. Id. ¶ 252.

The second alleged assault occurred on February 2, 2018. Id. ¶79. Plaintiff alleges Defendant Hall slammed his hand in the food flap, and ordered Defendants Atteberry, Brown, Chandler, Nosbisch, Philbert, and C. Williams to forcibly extract him from his cell using more force than necessary under the circumstances. Id. ¶¶ 81-82. Plaintiff alleges that, after he was removed from his cell, Defendant C. Williams "pressed the top edge of a riot shield into [his] neck and threw him to the ground"; Defendants C. Williams and Nosbisch punched him in the face up to 25 times; Defendants Atteberry, Brown, and Chandler also punched him; Defendant Brown slammed his head into the walls and floor; and Defendants Hall, Atteberry, Brown, Chandler, Nosbisch, Philbert, and C. Williams "put a spit shield over [his] face so that nobody would see the severity of his injuries." Id. ¶¶ 83-84. Plaintiff does not allege that Defendant Folsom participated in the alleged assault but says a negative interaction with Defendant Folsom precipitated the incident. Id. ¶¶ 78-80. Plaintiff alleges Defendants Folsom and Hall "coordinated the use of force to penalize [him] for speaking up about officer abuse." Id. ¶ 259.[8]

---

[8] In Count I.A, Plaintiff asserts a First Amendment retaliation claim against Defendants Folsom and Hall based on this incident. See Sec. Am. Compl. ¶¶ 127-33.

The third alleged assault occurred on July 16, 2018, when Plaintiff requested medical treatment because officers had been starving him for days, but the dorm sergeant refused his request. Id. ¶¶ 92-93. Plaintiff alleges he attempted suicide by puncturing a vein in his arm. Id. ¶ 93. Because of the amount of blood in his cell, the sergeant "had no choice but to order [Plaintiff] be taken to the medical unit." Id. Defendant Geiger escorted Plaintiff to the medical unit, and, once there, Defendant Willis allegedly assaulted him while he was handcuffed and shackled. Id. According to Plaintiff, Defendant Willis choked him, causing his vision to become blurred, and Defendants Knott, Webb, and Geiger, who were present, failed to intervene. Id. Plaintiff further alleges Defendants Knott and Webb punched him in the face and chest, and Defendant Woods, who viewed the entire incident, did not intervene. Id.

The fourth alleged assault occurred on July 28, 2020. As summarized previously, see supra Section V.i., Plaintiff alleges Defendants Gwara, Moreland, and E. Williams beat him while he was cuffed and shackled, and Defendants Bryant and Oliva were present but failed to intervene. Sec. Am. Compl. ¶¶ 111, 273.

Prison guards may use force against an inmate when necessary "to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320 (1986). See also Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991). However,

the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987). As such, "force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley, 475 U.S. at 320-21).

In analyzing whether a plaintiff sufficiently alleges an officer used force maliciously and sadistically to cause harm, courts consider various factors, including the need for the use of force, the extent of force used in relation to the prisoner's conduct, the threat of harm the prisoner posed to staff and inmates, whether the officer tried to "temper the severity of a forceful response," and the injuries inflicted. Id. (citing Hudson, 503 U.S. at 8). In considering these factors, courts may draw inferences "as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id. at 1300-01. When an officer uses excessive force against a prisoner, officers who are present and in a position to intervene can be held personally liable if they do not. Id. at 1301 (citing cases).

Accepting Plaintiff's allegations as true, the assaults he describes—either from their inception or at some point thereafter—were not done "to maintain or restore discipline." See Whitley, 475 U.S. at 320. In fact, Plaintiff alleges Defendants had no reason at all to use force against him, permitting the inference they did so maliciously or sadistically to cause harm. As such, Plaintiff states a plausible excessive force claim in Counts III.D through III.G. Contrary to Defendants' contention, Plaintiff clarifies which Defendants were involved in the separate incidents and how they were involved—either as direct participants or observers who failed to intervene. Whether the ultimate facts will demonstrate liability on the part of all named Defendants is best addressed on summary judgment in consideration of all the facts. At this juncture, Plaintiff has done enough to put Defendants on notice of the claims against them.

### v.   Qualified Immunity: Count II.D

As discussed previously, see supra Section V.ii, Plaintiff alleges Defendants Van Allen, Brown, Folsom, Hall, Philbert, Geiger, and Knott subjected him to unconstitutional conditions of confinement by arbitrarily denying him privileges to which he was entitled on CM status, including outside recreation and showers. Sec. Am. Compl. ¶¶ 40, 43, 210, 212, 219. These Defendants invoke qualified immunity as to this claim, arguing Plaintiff

fails to allege the violation of a constitutional right that was clearly established at the time. Van Allen Mot. at 17-20; Knott Mot. at 17-20.

An officer sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows officers to "carry out their discretionary duties without the fear of personal liability or harassing litigation." Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id.

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he was acting within his discretionary authority at the relevant times. Dukes v. Deaton, 852 F.3d 1035, 1041 (11th Cir. 2017). There is no dispute the officer Defendants were acting within their discretionary authority at the relevant times. Thus, the burden shifts to Plaintiff to point to allegations that, accepted as true, show the officer Defendants violated a clearly established constitutional right. Alcocer, 906 F.3d at 951.

For the reasons already discussed, the Court finds Plaintiff alleges fact that, accepted as true, state a plausible Eighth Amendment claim. Defendants argue, however, there was no case law by the Supreme Court of the United States, the Supreme Court of Florida, or the Eleventh Circuit that would have put the officer Defendants on notice that their conduct violated a clearly established constitutional right. Van Allen Mot. at 19-20; Knott Mot. at 18-19.

The qualified immunity doctrine serves to ensure officers are on notice of what conduct can subject them to liability. Lewis v. City of West Palm Bch., Fla., 561 F.3d 1288, 1291 (11th Cir. 2009). Thus, even if a court were to find an officer violated a person's constitutional rights, if that right was not clearly established at the time the officer engaged in the conduct, the officer may not be sued under § 1983. Id.

> A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Id. at 1291-92 (internal citations omitted). See also Ingram v. Kubik, 30 F.4th 1241, 1252 (11th Cir. 2022).

In Count II.D, Plaintiff does not allege Defendants Van Allen, Brown, Folsom, Hall, Philbert, Geiger, and Knott were personally responsible for his

years long CMI confinement status. Rather, Plaintiff alleges that, with the knowledge he had been held in solitary conditions for so long and was at the mercy of officers to permit him the limited privileges that come with that status, their intentional deprivation of those privileges—specifically related to hygiene and exercise—constituted "the wanton infliction of pain." See Sec. Am. Compl. ¶ 217. He alleges the officers' actions were "arbitrary and vindictive," and the officers were aware of the "substantial risk of harm caused by the[] deprivations" because the risk was obvious. Id. ¶¶ 44, 219. Additionally, Plaintiff alleges the deprivations occurred with such regularity that he went weeks without showers and years without being permitted outside.[9]

At bottom, Plaintiff alleges Defendants Van Allen, Brown, Folsom, Hall, Philbert, Geiger, and Knott deprived him of "the minimal civilized measure of life's necessities." See Crosby, 379 F.3d at 1289. At the time of the alleged conduct—2016 and beyond—it was clearly established that conditions of confinement can offend Eighth Amendment principles, either alone or in combination, "when they have a mutually enforcing effect that produces the

---

[9] The Court acknowledges Plaintiff does not identify each separate date on which each Defendant allegedly deprived him of exercise or showers. However, the pleading rules do not require that he allege facts with such a degree of specificity. Whether Defendants deprived Plaintiff of opportunities to bathe or exercise outside and whether such deprivations occurred with such regularity so as to constitute cruel and unusual punishment are questions best addressed on a more complete record.

deprivation of a single, identifiable human need such as food, warmth, or exercise." Wilson, 501 U.S. at 304. And both the Supreme Court and the Eleventh Circuit have recognized that exercise and hygiene are "identifiable human need[s]," the deprivation of which can result in an Eighth Amendment violation. Id.; Brooks, 800 F.3d at 1303.

In fact, in Wilson, the Court cited with approval a Ninth Circuit opinion, which affirmed the district court's ruling that "outdoor exercise [is] required when prisoners [are] otherwise confined in small cells almost 24 hours per day." 501 U.S. at 304-05 (citing Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) ("[I]t [is] cruel and unusual punishment for a prisoner to be confined for a period of years without opportunity to go outside.")). In Brooks, the Eleventh Circuit stated, "This Court, and the old Fifth Circuit, have long recognized a 'well established' Eighth Amendment right 'not to be confined ... in conditions lacking basic sanitation.'" 800 F.3d at 1303 (alteration in original). See also Chandler v. Baird, 926 F.2d 1057, 1065-66 (11th Cir. 1991) (holding a prisoner's right not to be subjected to conditions causing "severe discomfort" while at the same time "lacking [in] basic sanitation" was well established).

Even if there is no case from the United States Supreme Court, the Supreme Court of Florida, or the Eleventh Circuit with indistinguishable facts, the broad statements of Eighth Amendment principles articulated by the

25

Supreme Court and Eleventh Circuit put Defendants on notice that depriving Plaintiff of outdoor exercise and regular showers while he had been held in solitary conditions for nearly 24 hours per day could constitute cruel and unusual punishment in violation of the Eighth Amendment. See Ingram, 30 F.4th at 1252, 1254 (holding the officer defendant was not entitled to qualified immunity on a claim of excessive force during arrest because "a broad[], clearly established principle . . . control[led]"). Thus, at this juncture, Defendants are not entitled to qualified immunity as to the conditions-of-confinement claim alleged in Count II.D.

Accordingly, it is now

**ORDERED:**

1.      Defendants Van Allen, Atteberry, Brown, Chandler, Folsom, Hall, Nosbisch, Philbert, C. Williams, Geiger, Willis, Woods, Bryant, Gwara, Moreland, E. Williams, and Oliva's motion to dismiss (Doc. 159) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** only to the extent Plaintiff's retaliation claim against Defendants Bryant, Gwara, Moreland, and E. Williams is dismissed for Plaintiff's failure to state a plausible claim for relief. In all other respects, the motion is **DENIED**.

2.      Defendants Knott and Webb's motion to dismiss (Doc. 200) is **DENIED**.

3.     The officer Defendants shall answer the complaint within **twenty days**.

4.     In light of the parties' joint notice that they are unable to conclude discovery any sooner than originally planned, see Amended Joint Proposed Case Management Report (Doc. 287), the Court finds an amended case management and scheduling order is not warranted. The deadlines set in the December order remain in place. See Order (Doc. 218).

5.     The Court directs the parties to confer in good faith regarding Plaintiff's pending motion for the appointment of an independent expert psychiatrist (Doc. 209). In Plaintiff's 3.01(g) certification, he suggested an attempt to confer with opposing counsel may have been unsuccessful (Doc. 209 at 9), the Florida Department of Corrections (FDOC) and supervisory Defendants now have new counsel, and the officer Defendants have not responded to the motion. Additionally, since the filing of the motion, circumstances have changed relative to Plaintiff's confinement status, and, in response to Plaintiff's motion for permanent injunction (Doc. 281), the FDOC and the supervisory Defendants indicated they may seek a "compulsory medical exam of Plaintiff." By **May 25, 2022**, Plaintiff's counsel shall file a notice supplementing the 3.01(g) certification of his motion (Doc. 209). If the

parties are unable to resolve the issues raised in Plaintiff's motion (Doc. 209),

the officer Defendants shall file a response by **June 6, 2022**.

      **DONE AND ORDERED** at Jacksonville, Florida, this 12th day of May

2022.

                                            BRIAN J. DAVIS
                                   United States District Judge

Jax-6
c:
Counsel of Record