UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM H. MELENDEZ,

        Plaintiff,

v.                                               Case No. 3:20-cv-1023-BJD-JBT

RICKY DIXON, et al.,

        Defendants.
_____

**ORDER**

**I. Status**

Before the Court are the following motions: Plaintiff's Amended Motion for Court to Appoint Independent Expert Psychiatrist (Doc. 209), Plaintiff's Petition Seeking Interim Attorney's Fees and Costs incurred in obtaining emergency injunctive relief (Doc. 288); and Plaintiff's Application for Attorney's Fees incurred on appeal from the Court's orders granting his motions for injunctive relief (Doc. 311-1).[1]

Plaintiff is proceeding on a second amended complaint against the Florida Department of Corrections (FDOC), nineteen corrections officers, and

---

[1] Plaintiff filed his motion for appellate attorney's fees in the appellate court, and the Eleventh Circuit granted his simultaneously filed motion to transfer the motion to this Court pursuant to Eleventh Circuit Rule 39-2. *See* Eleventh Circuit Order (Doc. 311).

the following supervisory prison officials: the Secretary of the FDOC, Ricky Dixon; the Warden of Florida State Prison (FSP), Donald Davis; the Assistant Warden of FSP, Jeffrey R. McClellan; the former Warden of FSP, Barry Reddish; the former Region 2 Regional Director for the FDOC, Erich Hummel; the current Regional Director, John Palmer; Classification Officer at FSP, P. Hunter; the Warden of New River Correctional Institution (NRCI), Ronnie Woodall; and Classification Supervisor of NRCI, Kevin Tomlinson (Doc. 134). Plaintiff asserts claims under the First Amendment (retaliation), the Eighth Amendment (cruel and unusual punishment and excessive force), the Fourteenth Amendment (due process), and the Americans with Disabilities and Rehabilitation Acts (discrimination). *See generally* Doc. 134.

Plaintiff's claims stem from his nearly five-year-long placement in solitary confinement, or close management (CM),[2] while at FSP and NRCI. *Id.* at 3-5. Plaintiff alleges he was isolated for years and "intentionally deprived … of basic human needs such as human contact, social interaction, physical exercise," and appropriate mental health care. *Id.* at 4. He seeks damages and

---

[2] "Close management" is defined as "the separation of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, when the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla. Admin. Code r. 33-601.800(1)(a).

injunctive relief. *Id.* at 105. As relevant to the motions under review, Plaintiff's Eighth Amendment claims against the supervisory officials have been extensively litigated already. This Court granted two emergency motions for injunctive relief (Docs. 189, 203, 242, 253, 266) and held a three-day evidentiary hearing on one of the motions (Docs. 240, 241, 243). And the Eleventh Circuit issued an opinion on the FDOC's interlocutory consolidated appeals after expedited briefing (Doc. 283).

## II. Motion to Appoint a Neutral Expert Under Rule 706

It has been Plaintiff's position since he initiated this action that he suffers from serious mental illness, and his extended placement in CM exacerbated his mental illness, causing him to attempt suicide on multiple occasions. The FDOC and supervisory Defendants, however, have argued that Plaintiff engages in self-harm purely for "secondary gain" and not from a genuine desire to kill himself. As noted in the Court's January 31, 2022 order granting Plaintiff's second emergency motion for injunctive relief, "[t]he mental health experts disagree on whether Plaintiff is legitimately suicidal or harms himself for 'secondary gain'." Doc. 253 at 10. *See also* Order Doc. 203 at 11-14 (summarizing the opposing experts' opinions).

In his motion to appoint an independent expert, Plaintiff asserts his psychiatric condition is a "central issue[] in [this] dispute . . . including his

3

mental health diagnosis and his current risk of suicide or severe self-harm." Doc. 209 at 3. He questions whether prison mental health professionals can objectively and fairly evaluate him and offer reliable opinions about his condition and housing status. *Id.* at 3, 6. Thus, he requests appointment of an independent psychiatrist who can provide an unbiased opinion about his present mental health condition including whether he is suicidal or likely to self-harm, whether prolonged solitary confinement exacerbated or will exacerbate his mental health, and whether "he can be safely [housed in CM], as opposed to a less restrictive form of isolation." *Id.* at 5.[3]

The individual officer-Defendants do not oppose Plaintiff's motion for appointment of an independent expert. *See id.* However, the FDOC and supervisory Defendants do (Doc. 211). Those Defendants argue the issues are not complex, an additional expert opinion would be cumulative, appointment of a neutral expert is not appropriate to "avoid 'the battle of the experts,'" and Plaintiff's motion is an attempt to circumvent Rule 35.[4] Doc. 211 at 5-7.

---

[3] In a supplement to his motion (Doc. 296), Plaintiff stresses that he requires a comprehensive psychiatric examination, which he has not had since December 2020. Doc. 296 at 2-3. He notes that, even after the Court ordered he be returned to general population, he has continued to self-harm. *Id.* at 2.

[4] Rule 35 provides in pertinent part, "The court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1).

4

Under Rule 706 of the Federal Rules of Evidence, a court "may appoint any expert the parties agree on and any of its own choosing" as long as the expert "consents to act." Fed. R. Evid. 706(a). Rule 706 itself provides no guidance to district courts in assessing whether to appoint a neutral expert, though the decision rests within the sound discretion of the district court. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1348 (11th Cir. 2003). Appointment is appropriate "where the evidence or testimony at issue is scientifically or technically complex." *Id.* "The policy goal of Rule 706 is to promote accurate fact-finding." 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6304 (2d ed. 2022).

Plaintiff's mental health condition is a central issue in this case. And, as has been made clear from the evidence presented thus far in connection with Plaintiff's emergency motions for injunctive relief, the issue is somewhat complex. However, the Court finds that appointment of a neutral expert is not warranted under the circumstances. Plaintiff already has retained two experts who can and have offered relevant, helpful, and understandable testimony regarding whether CM confinement has affected or could affect Plaintiff's mental health. Thus, this is not a situation where Plaintiff, because of his incarcerated status, will be disadvantaged by an inability to retain an expert to rebut an expert opinion offered by Defendants. *Cf. Steele v. Shah*, 87 F.3d

5

1266, 1271 (11th Cir. 1996) (noting appointment of an expert under Rule 706 may be appropriate in a case involving an indigent plaintiff "to avoid a wholly one-sided presentation of opinion[] on [a medical] issue"); *Hobbs v. United States*, 683 F. App'x 896, 896, 898 (11th Cir. 2017) (holding the district court abused its discretion by failing to consider and to issue a reasoned ruling on whether a neutral expert should have been appointed under Rule 706 given the pro se prisoner requested "expert assistance" to prove his medical malpractice claim against prison doctors who treated his spinal condition).

Simply because the parties' experts offer competing opinions regarding why Plaintiff harms himself, the kind of mental health treatment he requires, and the appropriate housing status for him in light of his mental health status does not justify appointment of a neutral expert under Rule 706. *See, e.g.*, *Oklahoma Nat. Gas Co., a Div. of ONEOK v. Mahan & Rowsey, Inc.*, 786 F.2d 1004, 1007 (10th Cir. 1986) ("The fact that the parties' experts have a divergence of opinion does not require the district court to appoint experts to aid in resolving such conflicts." (*cited with approval by Quiet Tech.*, 326 F.3d at 1349)). Any perceived bias in an expert's opinions may be explored through cross-examination.

For the stated reasons, Plaintiff's motion for appointment of a neutral expert is due to be denied.

### III. Motions for Interim Attorney's Fees & Costs

Plaintiff seeks interim attorney's fees and costs incurred in litigating his emergency motions for injunctive relief both in this Court and on appeal. Doc. 288 at 1, 5; Doc. 311-1 at 7-9. Plaintiff argues he is "a prevailing party" under 42 U.S.C. § 1988 because he obtained two preliminary injunction orders—one that was affirmed on appeal—and negotiated a settlement on his motion for permanent injunction, "result[ing] in a material change in the relationship between the parties." Doc. 288 at 2-3, 5-6; Doc. 311-1 at 8-9. The FDOC opposes Plaintiff's motions (Docs. 297, 311-4), arguing Plaintiff is not the prevailing party, and his motions are premature. Doc. 297 at 2; Doc. 311-4 at 10-14.[5]

A court, "in its discretion, may allow the prevailing party [in an action to enforce § 1983] . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988(b). A plaintiff is said to be the prevailing party "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012). To be considered the prevailing party, a plaintiff "must be able to point to a resolution of the dispute [that] changes the legal relationship between [himself] and the defendant."

---

[5] The individual officer-Defendants take no position on Plaintiff's motions for attorney's fees and costs.

7

*Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). The Eleventh Circuit defines "prevailing party" as one who "has been awarded . . . at least some relief on the merits of his claim or [where there is] a judicial imprimatur on the change in the legal relationship between the parties." *Smalbein ex rel. Est. of Smalbein v. City of Daytona Bch.*, 353 F.3d 901, 905 (11th Cir. 2003). *See also Ruffin v. Great Dane Trailers*, 969 F.2d 989, 993 (11th Cir. 1992) ("[T]he very import of *Garland* is that a plaintiff need only prevail on one significant issue to qualify as a prevailing party.").

Both the Supreme Court and the Eleventh Circuit recognize that entry of an injunction in favor of the plaintiff can, in some circumstances, "satisfy th[e] [prevailing party] test." *Lefemine*, 568 U.S. at 4; *Common Cause Ga. v. Georgia*, 17 F.4th 102, 106-07 (11th Cir. 2021); *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1558 (11th Cir. 1987) (*abrogated in part as recognized in Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1356 (11th Cir. 2009)). But if a plaintiff achieves meaningful relief *pendent lite*, he may be dubbed the "prevailing party" under § 1988 only when there is no possibility the relief provisionally granted can be "undone" by future litigation in the case. *See Sole v. Wyner*, 551 U.S. 74, 83 (2007).

In *Sole*, the Supreme Court reversed an award of attorney's fees for a plaintiff who succeeded at the preliminary injunction stage but ultimately

8

failed to demonstrate entitlement to a permanent injunction, noting, "[a] plaintiff who 'secur[es] a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against [her],' has '[won] a battle but los[t] the war.'" *Id.* at 82, 86 (alterations in original). The Court reasoned the plaintiff achieved a "fleeting success" when, after a "hasty and abbreviated" hearing, the district court granted her motion for a preliminary injunction to prevent the state from enforcing a "bathing suit rule" to block her from presenting a nude display at the public beach. *Id.* at 83, 84. After consideration of a complete record, the district court granted summary judgment in favor of the defendant, finding the bathing suit rule was valid and enforceable. *Id.* at 80-81, 83.

The Court held, "Prevailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." *Id.* That is because a prevailing party is one who gains an "*enduring* 'chang[e] [in] the legal relationship' between [himself] and the [defendant]." *Id.* at 86 (emphasis added; first and second alterations in original) (quoting *Garland*, 489 U.S. at 792). The plaintiff "had gained no enduring change in the legal relationship between the parties," *id.* (cleaned up), given "the eventual ruling on the merits for defendants ... superseded the preliminary ruling," *id.* at 84-85. The Court noted as dicta that,

9

had the plaintiff moved for attorney's fees after receiving "provisional relief" in the form of the preliminary injunction, which expired "once the [nude beach] display took place," it would have been premature because the litigation had not yet been "definitively resolve[d]." *Id.* at 84.

In *Common Cause*, the Eleventh Circuit held the plaintiff was the prevailing party for obtaining a temporary restraining order, which "altered the [defendant's] conduct and benefited [the plaintiff] and [its member-voters]." 17 F.4th at 108. After the plaintiff obtained injunctive relief, however, the state enacted two new voting laws, which the parties agreed "made further litigation unnecessary," and the action was dismissed with prejudice. *Id.* at 106. Thus, there was no possibility the relief provisionally granted could be undone by a later ruling. *Id. See also Taylor*, 810 F.2d at 1557-58 (holding the plaintiffs were the prevailing party because they obtained a preliminary injunction on the merits, which remained in effect for over two years until the city enacted legislation that mooted the suit).[6]

Florida district courts in the Eleventh Circuit that have granted attorney's fees to a party who obtained preliminary injunctive relief have done

---

[6] The Eleventh Circuit observed in *Billups*, "Although *Taylor* was decided under the 'central issue' standard, which the Supreme Court disavowed . . . in favor of the 'significant issue' test, the underlying rule that a preliminary injunction is a 'material alteration of the legal relationship of the parties' remains good law." 554 F.3d at 1356 (citing *Garland*, 489 U.S. at 791).

so only after the litigation had been definitively resolved and there was no chance the provisional relief could be undone or superseded by a later ruling in the case. *See, e.g.*, *Haddad v. Dudek*, No. 3:10-cv-414-J-34TEM, 2011 WL 7293403, at *3 (M.D. Fla. Oct. 20, 2011), *report and recommendation adopted as modified*, 2012 WL 473839 (Feb. 2, 2012); *Joyce v. Potter*, No. 5:06-cv-339-Oc-10GRJ, 2007 WL 2050955, at *1 (M.D. Fla. July 16, 2007), *amended,* 2008 WL 11434570 (Apr. 7, 2008); *ACLU of Fla., Inc. (Greater Tampa Chapter) v. Polk Cnty., Fla.*, No. 8:05-cv-2266-T-17-TGW, 2006 WL 2147716, at *3 (M.D. Fla. July 28, 2006).

In *Haddad*, the plaintiff, a quadriplegic, obtained a preliminary injunction, which resulted in defendants enrolling her in Medicaid waiver programs for in-home health care services. 2011 WL 7293403, at *1-2. Defendants thereafter moved to dismiss the case as moot because, under the relevant regulations, they lacked any discretion to disenroll the plaintiff from the program even if the court's injunction were to be dissolved. *Id.* at *3. The court dismissed the case, and the plaintiff moved for attorney's fees as the prevailing party. *Id.* at *3-4. Finding the court-ordered mandatory injunction was a decision on the merits that "resulted in a permanent change in the legal relationship of the parties," the court ruled that the plaintiff was the prevailing party entitled to attorney's fees. *Id.* at *6.

In *Joyce*, the plaintiff filed an action alleging the United States Postal Service (USPS) violated her due process and other rights by revoking her security clearance and suspending her contracts for the delivery of mail based on a nearly ten-year-old investigation into the "alleged rifling of a package," of which she had been cleared of any wrongdoing. 2007 WL 2050955, at *1-2. The court granted in part the plaintiff's motion for preliminary injunction, directing the USPS to reconsider the plaintiff's appeal of her suspension and to hold a hearing at which she and her attorney could be heard. *Id.* at *2.

Instead of holding a hearing, the USPS voluntarily reinstated the plaintiff and restored her security clearance, assuring the plaintiff and the court that "the matter of the rifled blue box and the investigation arising therefrom [would] not [again] be a barrier to [the plaintiff's] holding a security clearance" with the USPS. *Id.* at *3, 5. Because the USPS voluntarily took action that mooted the plaintiff's remaining claims, the court dismissed the case. *Id.* at *3. The court found the plaintiff was entitled to attorney's fees as the prevailing party because she obtained preliminary injunctive relief that was not and could not be "superseded by a later ruling unfavorable to [her]." *Id.* at *5. *See also ACLU of Fla.*, 2006 WL 2147716, at *3 (awarding the plaintiffs attorney's fees because they obtained a preliminary injunction that

12

materially changed the legal relationship between the parties and subsequent, voluntary action taken by the defendant mooted the controversy).

### a. Plaintiff's Requested Relief

In his complaint, Plaintiff seeks the following injunctive relief on his Eighth Amendment conditions-of-confinement claims against Defendants Inch, Palmer, Davis, and McClellan (Counts II.A and II.B):

> [A]n order requiring that he be removed from [CM] and transferred to an appropriate facility for inpatient mental health care. [He] further seeks an order barring the Department from imposing upon him any form of isolation lasting more than 72 hours. Alternatively, [he] seeks an order including but not limited to requiring these Defendants to provide [him] a minimum of one hour of exercise per day outside of his cell, five days per week, consistent with ACA standards for restrictive housing prisoners; showers three days a week; access to his radio and tablet; weekly phone access; contact visitation; congregate religious services; and restoration of his walker. [He] also seeks an order barring Defendants . . . from placing [him] on property restriction or 'strip status' and from imposing sanctions on him for minor rule infractions including talking to prisoners in neighboring cells. [He] further requests an order requiring Defendants . . . to ensure their officers conduct an out-of-cell interview with [him] prior to making any recommendation as to his CM status and that these statements be recorded; that [he] be afforded the opportunity to review and challenge the Behavioral Risk Assessments considered by the ICT;[7] that [he] be afforded the opportunity to attend the ICT hearings and speak on his behalf; and that

---

[7] Institutional Classification Team.

> Defendants . . . require their officers to provide [him] with a concrete plan for stepping down from CM to the general population that involves out-of-cell programming and lasts no more than 30 days.

Doc. 134 ¶¶ 178, 193, 208.

### b. Plaintiff's First Emergency Motion for Preliminary Injunction & FDOC's First Appeal

In his first emergency motion for injunctive relief, Plaintiff sought an order directing Defendants Inch, Palmer, Davis, McClellan, and the FDOC to remove him from CM and transfer him to a mental health unit. Doc. 171, S-179 at 1, 4. On October 6, 2021, after considering the parties' evidence and hearing oral argument, the Court orally granted Plaintiff's motion.[8] An endorsed order directed (in part) Defendants to "immediately transfer Plaintiff from the close management unit at [FSP] to a suitable mental health unit for inpatient psychiatric treatment . . . until . . . [he is] capable of returning to the general population." *See* Order (Doc. 189). A written order followed. *See* Order (Doc. 203). Defendants simultaneously filed a notice of appeal (Doc. 194) and an emergency motion to stay the Court's order (Doc. 195). This Court denied the motion to stay, *see* Order (Doc. 197), and Defendants transferred Plaintiff to Suwannee Correctional Institution, where he was placed first in a crisis

---

[8] The Court found an evidentiary hearing was not warranted because the relevant facts were not "bitterly disputed." *See* Orders (Docs. 176, 197).

stabilization unit (CSU) and then a transitional care unit (TCU). *See generally* Doc. 220-2. Plaintiff remained in the mental health unit from October 8, 2021 through November 8, 2021, when the FDOC returned him to CM or administrative confinement. *Id. See also* Doc. 235-1 at 6-8.

In issuing its decision on April 15, 2022, the Eleventh Circuit found the appeal from Plaintiff's first motion for preliminary injunction was moot because, ninety days after its entry, the preliminary injunction expired by operation of law under 18 U.S.C. § 3626(a)(1)(A). Doc. 283 at 23-25. As such, the Eleventh Circuit dismissed the FDOC's first appeal. *Id.* at 25, 63.

### c. Plaintiff's Second Emergency Motion for Preliminary Injunction & FDOC's Second Appeal

In his second emergency motion for preliminary injunction, Plaintiff sought the following relief: (1) return to the TCU for inpatient mental health care; (2) appointment of an independent mental health expert; (3) notice and independent review before the FDOC were to discharge Plaintiff from the TCU; and (4) for Defendants to be barred from holding Plaintiff in solitary confinement in the future. Doc. 225 at 1-2. Plaintiff also requested that the Court transfer him to a TCU while the motion was under review. *Id.*

The Court held a three-day evidentiary hearing. On January 24, 2021, after weighing all the evidence presented, the Court, by oral pronouncement and endorsed order, granted Plaintiff's emergency motion, directing the FDOC,

in pertinent part, to "return Plaintiff to a general population housing status." *See* Orders (Docs. 242, 253). The FDOC appealed the Court's order and moved for a stay both in this Court and in the appellate court (Docs. 244, 245, 262).[9] After directing the FDOC to show cause why it had not complied with the Court's order (Doc. 258), the FDOC filed a notice advising it moved Plaintiff to a general population housing status on February 10, 2022 (Doc. 262).

After expedited briefing on the consolidated appeals, the Eleventh Circuit affirmed this Court's order granting Plaintiff's second emergency motion for preliminary injunction (Doc. 283).

### d. Settlement on Plaintiff's Motion for Permanent Injunction

On April 7, 2022, Plaintiff moved for entry of a permanent injunction because the January preliminary injunction was set to expire by operation of law on April 24, 2022, and the FDOC represented it intended to return Plaintiff to CM once that happened. Doc. 275 at 1. In his motion, Plaintiff sought an order (1) prohibiting the FDOC from returning him to the solitary conditions he previously experienced (confinement for up to 22 hours per day in his cell with "minimal to rare meaningful contact with other individuals and the lack

---

[9] In a notice (Doc. 262), the FDOC advised that the Eleventh Circuit had denied its emergency motion to stay but granted its motion to consolidate its appeal from the second motion for preliminary injunction with the appeal already pending from the first motion for preliminary injunction.

16

of opportunities for congregate recreation, meals, and programming"); and (2) an order referring Plaintiff to a psychiatrist for a comprehensive evaluation, including an assessment of his "S grade." *Id.* at 1-2.

The FDOC opposed the motion both procedurally and substantively (Doc. 281). Procedurally, the FDOC argued it had been denied due process because it had not had a meaningful opportunity to prepare for a hearing on the merits, and discovery was ongoing. Doc. 281 at 3-5. Substantively, the FDOC argued Plaintiff had demonstrated nothing more than a "likelihood" of success on the merits of his Eighth Amendment claims. *Id.* at 6.

The Court granted Plaintiff's motion for expedited discovery and set an evidentiary hearing on his motion for permanent injunction. *See* Order (Doc. 277). In advance of the evidentiary hearing, the Court convened a status conference at which the parties reached a tentative settlement. Thus, the Court denied as moot Plaintiff's emergency motion. *See* Order (Doc. 284). The interim partial settlement agreement provides in relevant part:

> Defendant FD[O]C will maintain Plaintiff in a general population housing status where he shall be afforded the rights and privileges consistent with his assigned general population housing status, pursuant to FD[O]C policy. The interim Settlement Agreement will apply throughout the pendency of the litigation … until a trial on the merits, and will be consistent with the terms of the Second Preliminary Injunction Order dated January 31, 2022, and as set forth [in the Settlement Agreement].

17

Doc. 286-1 at 4.

The parties agree that the FDOC may take disciplinary action against Plaintiff if he engages in behavior that warrants it, including changing his housing status but, if that were to happen, the FDOC would notify Plaintiff's attorneys. *Id.* at 4-5. Additionally, if Plaintiff were to engage in conduct warranting a referral to CM, the FDOC must immediately commence the ICT process and video record any ICT hearings regarding Plaintiff's housing status. *Id.* at 5. The parties agree that the Court may enforce the terms of the settlement agreement during the pendency of the litigation. *Id.* at 6.

### e. Analysis

There is no doubt Plaintiff has received—provisionally and temporarily—some of the relief he sought in his complaint. Pursuant to the Court's first order granting preliminary injunctive relief, Plaintiff was transferred to a mental health unit for thirty-one days. Pursuant to the second order, Plaintiff was housed in general population from February 10, 2022, through April 21, 2022, seventy days. Thus, through the Court's orders granting Plaintiff's two emergency motions for preliminary injunction, there was a judicially sanctioned change in the legal relationship of the parties.

However, Plaintiff's interim success does not make him the "prevailing party" under § 1988 because there has been no *enduring* change in the

relationship between the parties. The first order granting preliminary injunctive relief resulted in a one-month change in Plaintiff's housing status; the second order resulted in a 70-day change in Plaintiff's housing status. Both orders granting Plaintiff's emergency motions for preliminary injunction have expired by operation of law, and the parties' interim partial settlement agreement—which the Court may enforce if necessary and asked to do so— remains in effect only pending a final resolution of the case. At the latest, this case will be resolved in August 2023. *See* Amended Case Management and Scheduling Order (Doc. 305).

Given this case has not been definitively resolved, there remains a chance the provisional success Plaintiff obtained can be superseded by a later ruling. In other words, it remains to be seen whether this case will follow a path similar to that in *Sole*—where the plaintiff's preliminary success was "ephemeral" because the court ultimately held against her on the merits of her claim. *See Sole*, 551 U.S. at 86. As has been made clear by the parties' filings, Plaintiff's Eighth Amendment claims against the supervisory officials remain very much in dispute. While Plaintiff has made a formidable early showing that he is likely to succeed on the merits of his Eighth Amendment claims, whether a jury ultimately will find in his favor is yet to be seen. And the number of prevailing parties in a case is restricted to one. *Royal Palm*

19

*Properties, LLC v. Pink Palm Properties, LLC*, 38 F.4th 1372, 1378 (11th Cir. 2022) ("The plain language of Rule 54 unequivocally restricts the number of prevailing parties to one."). As such, Plaintiff cannot yet claim "prevailing party" status, and his motions for interim attorney's fees are due to be denied.

Accordingly, it is

**ORDERED:**

1. Plaintiff's Amended Motion for Court to Appoint Independent Expert Psychiatrist (Doc. 209) is **DENIED**.

2. Plaintiff's Petition Seeking Interim Attorney's Fees and Costs (Doc. 288) and Plaintiff's Application for Attorney's Fees on appeal (Doc. 311-1) are **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of September 2022.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record