UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM H. MELENDEZ,

        Plaintiff,

v.                                  Case No. 3:20-cv-1023-BJD-JBT

RICKY DIXON, et al.,

        Defendants.
_____

## ORDER

Plaintiff, William Melendez, an inmate of the Florida penal system, is proceeding through counsel on a second amended complaint for the alleged violation of his civil rights (Doc. 134). Plaintiff's claims for damages and injunctive relief stem from his extended placement in isolation, or close management status, while at Florida State Prison and New River Correctional Institution. Doc. 134 ¶ 1. Plaintiff alleges he was isolated for years and "intentionally deprived . . . of . . . social interaction, physical exercise," and appropriate mental health care and was subjected to improper uses of force by prison guards. Id. ¶¶ 5, 6, 8.

Before the Court are two motions: Plaintiff's motion to compel (Doc. 349), which the Florida Department of Corrections (FDOC) opposes (Doc. 355); and

the FDOC's unopposed motion for a two-week extension of the outstanding expert-disclosure deadlines (Doc. 356).

## Motion to Compel

Plaintiff seeks an order compelling the FDOC to produce (1) "complete unredacted personnel files and disciplinary records of the individual defendant officers" (personnel records) and (2) "all communications . . . that reference Plaintiff or the events alleged in his Complaint" (communications). Doc. 349 at 1, 8, 20. Plaintiff also requests attorney's fees incurred in bringing the motion. *Id.* at 1.

## Personnel Records

Primarily, the parties dispute the disclosure of personnel records Plaintiff requested in number 12 of his fourth set of requests for production of documents (Doc. 349-3). Specifically, Plaintiff sought "[a]ll [d]ocuments related to the hiring, employment, performance, misconduct, discipline, and/or remediation of all Defendants and Officers listed in the Defendants' Initial Rule 26 Disclosures from the dates each first applied for any position at FD[O]C to the present," including personnel files, employment applications, promotion-related materials, performance evaluations, and documents reflecting complaints from prisoners or others. Doc. 349-3 at 9-10. The FDOC

2

objected to the request as overly broad and seeking irrelevant information not proportional to the needs of the case. *Id.* at 25.

Plaintiff explains the FDOC eventually produced the requested personnel records but "impermissibly and unilaterally redacted information … including details of the defendant officers' previous uses of force—committed within the scope of their employment and in circumstances very similar to those alleged in Plaintiff's complaint—and the resulting injuries sustained by prisoners and officers." Doc. 349 at 6.[1] The parties exchanged numerous phone calls and emails regarding this and other discovery disputes (Doc. 349-4).

Before the FDOC agreed to produce any personnel records, counsel for the FDOC advised Plaintiff's counsel by email that it would redact "information like date of birth, employee ID number/badge number, addresses, social security numbers, etc.," as permitted under Florida Statutes. Doc. 349-4 at 9-10. Plaintiff's counsel did not oppose these redactions. *Id.* at 9. The FDOC also expressed its intent to redact references to injuries sustained by other inmates or staff unless the injuries occurred during an incident involving

---

[1] Plaintiff notes the contents of the various personnel files are inconsistent, leading Plaintiff to believe some may be incomplete. Doc. 349 at 6 n.4. To the extent Plaintiff believes information (other than what was intentionally redacted) may be missing from the documents the FDOC already produced, the parties should confer to rectify any problem, or Plaintiff's counsel may address any potential discrepancies when deposing witnesses, as appropriate.

3

Plaintiff, on the ground that such information constitutes protected health information (PHI) under HIPAA. *Id.* at 10. Plaintiff's counsel opposed such redactions as not warranted under HIPAA. *Id.* at 2, 7.

The FDOC made other redactions as well. Those other redactions are explained in a chart the FDOC's counsel sent Plaintiff's counsel on September 2, 2022 (Doc. 349-6). The chart shows that, in addition to redacting personal identifying information and PHI, the FDOC redacted the following other information: "[t]est [s]cores"; "[i]nformation on inmate location, prison layout, and medical information on inmate"; "descriptive information for Department issued equipment"; "[s]taff member medical information"; "criminal charge with location information"; and juvenile and adult criminal information on staff members. Doc. 349-6. The FDOC provided no legal basis for these additional redactions. *See generally id.*

In its response to Plaintiff's motion to compel, the FDOC appears to be attempting to revive the objections it originally asserted in response to the discovery request: overbreadth; irrelevancy; and proportionality. *See* Doc. 355 at 3-4. For instance, the FDOC accuses Plaintiff of engaging in "a fishing expedition" by seeking the named officer defendants' complete personnel records, especially given some of them "have been employed [by the FDOC] for decades." *Id.* at 3, 5, 10. District courts routinely permit discovery of corrections

4

officers' disciplinary reports or personnel records in these types of cases. *See, e.g.*, *Horn v. Wallace*, No. 3:06-cv-108-LC-EMT, 2007 WL 4414843, at *3 (N.D. Fla. Dec. 17, 2007) (citing cases). While some time parameters may be appropriate in some instances, in producing the records it originally complained were not relevant or proportional to the needs of the case, the FDOC abandoned these objections.[2]

With respect to the redactions it made, the FDOC explains in its response the basis for some but not others. For instance, the FDOC cites Florida Statutes as the basis for redacting personal identifying information, such as social security numbers and birthdates. Doc. 355 at 3. But social security numbers and birthdates are not the subject of the motion to compel. *See generally* Doc. 349. The FDOC also says that references to injuries sustained by non-party inmates or the defendant officers were redacted as PHI under HIPAA. Doc. 355 at 5.

Generally, HIPAA prevents a "covered entity" from disclosing PHI. 45 C.F.R. § 164.508(a)(1). However, a covered entity may disclose PHI "in

---

[2] The FDOC also contends in its response that Plaintiff's discovery request was objectionable because it seeks information not admissible under Federal Rules of Evidence 404. Doc. 355 at 4. Objecting to a discovery request on the ground that the evidence would be inadmissible is an improper objection. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

5

response to a discovery request" if "[t]he covered entity receive[s] satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made . . . to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section." 45 C.F.R. § 164.512(e)(1)(ii).

Plaintiff argues the FDOC is not a covered entity and suggests the personnel records do not constitute or contain PHI because they are not prison medical records but rather correctional documents, which, in some cases, merely mention injuries to staff or other inmates. Doc. 349 at 5 n.2, 12. The Court need not decide whether the FDOC is a covered entity or whether, in non-medical records, general mention of injuries constitutes PHI because the parties have executed a HIPAA agreement, which Plaintiff presented to the Court with his motion (Doc. 349-2). The HIPAA agreement complies with paragraph (e)(1)(v) of section 164.512: it stipulates that the parties "shall not use or disclose PHI for any purpose other than this litigation" and requires the return of any PHI to the covered entity at the end of the litigation. Doc. 349-2 ¶¶ 5, 9. *See also* 45 C.F.R. § 164.512(e)(1)(v).

The FDOC argues the HIPAA agreement does "not permit the release of [PHI] from other unidentified inmates in the requested personnel and disciplinary records sought" but applies only to a narrow category of PHI:

6

"injuries suffered by Plaintiff, injuries suffered by any corrections officer alleged to have been caused during an interaction with Plaintiff, and records relating to injuries suffered by other prisoners alleged to have been caused by or incurred during an interaction with Plaintiff." Doc. 355 at 7-8. *See also* Doc. 349-2 ¶ 4.

The HIPAA agreement indeed does limit the nature of PHI protected to these narrow categories, Doc. 349-2 ¶ 4, but only at the FDOC's insistence. Plaintiff notes the FDOC "refused to sign a qualified protective order that would cover the disclosure of medical information pertaining to non-party witnesses." Doc. 349 at 3 n.1. In its response, the FDOC does not directly address why it refused to sign a revised agreement that would address its concerns. *See generally* Doc. 355. It appears, though, that the FDOC did so in reliance on Florida Statutes section 945.10(1)(a). *See id.* at 6-7. That section provides, "Except as otherwise provided by law or in this section, [records containing PHI of inmates] held by the Department of Corrections are confidential and exempt from the provisions of [section] 119.07(1) and [section] 24(a), Art. I of the State Constitution." Fla. Stat. § 945.10(1) (2022). Section 119.07(1) and article 24(a) of the state constitution permit public inspection of or access to public records.

7

The Court finds the FDOC's position disingenuous and counterproductive. It first flatly refused to produce any responsive documents on grounds of relevance and proportionality and then, after abandoning those objections, asserted others that either are wholly unfounded and unsupported (for example, redactions of test scores, chemical agents, prison layout, department-issued equipment, or criminal backgrounds)[3] or easily addressed through a comprehensive qualified protective order or HIPAA agreement. Moreover, the reliance on Florida Statutes section 945.10(1)(a) is undeveloped and unpersuasive. That section exempts from *public* inspection an inmate's PHI, as that term is defined under HIPAA, and it expressly provides as follows: "This section does not limit any right to obtain records by subpoena or other court process." Fla. Stat. § 945.10(6) (2022). Additionally, in federal courts, privileges are governed by Rule 501 of the Federal Rules of Evidence. According to that Rule, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Plaintiff pursues federal claims against the defendant officers. Thus, federal privilege rules apply.

---

[3] The FDOC does not address these redactions in their response. *See generally* Doc. 355.

For the foregoing reasons, the Court will grant Plaintiff's motion to compel disclosure of unredacted copies of already produced personnel records.[4]

**Communications**

The second discovery dispute relates to Plaintiff's request number 9 of his fourth set of requests for production of documents. Doc. 349-3 at 6. Generally, Plaintiff sought communications (hard-copy and electronic) by Defendants that referenced Plaintiff or the events that are the subject of his lawsuit. *Id.* Plaintiff acknowledges in his motion that the FDOC has not objected to producing the requested communications, but that, at the time he filed the motion, the documents were two months overdue. Doc. 349 at 8.

The FDOC concedes in its response that it "has never objected" to this request. Doc. 355 at 2, 10. The FDOC argues Plaintiff improperly moved to compel these records given the FDOC has agreed to provide them. However, the FDOC does not assert in its response that the records were indeed produced. As such, Plaintiff's motion is due to be granted to the extent the FDOC must produce the requested communications if it has not yet done so.

---

[4] Of course, the FDOC may redact personal identifying information in accordance with Rule 5.2 of the Federal Rules of Civil Procedure.

**Request for Attorney's Fees**

Plaintiff moves for attorney's fees under Rule 37(a)(5)(A), which provides in pertinent part, "If [a motion to compel] is granted . . . the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The Rule is mandatory unless the movant did not attempt in good faith to obtain the disputed materials without court action, the opposing party's objection was "substantially justified," or other circumstances would make an award of expenses unjust. *See id.*

The FDOC objects to the request for attorney's fees, arguing its objections to Plaintiff's discovery request (for personnel records) were substantially justified because Plaintiff sought information protected under Florida law and HIPAA, and the HIPAA agreement does not "cover the entirety of the redacted information." Doc. 355 at 9-10. For the reasons addressed above, the Court finds the FDOC's objections were not substantially justified. The FDOC does not contest that Plaintiff attempted in good faith to obtain the discovery without the Court's intervention, nor does it contend other

10

circumstances would make an award of fees unjust. *See id.* Accordingly, the Court finds an award of attorney's fees is appropriate under Rule 37(a)(5)(A).

Under the traditional lodestar approach, Plaintiff requests $8,117.25 in attorney's fees for spending over 34 hours in bringing the motion to compel at a rate of $237.00 per hour (the PLRA statutory maximum hourly rate). Doc. 349 at 18-19. The FDOC does not address whether Plaintiff's counsel's requested hourly rate and the hours spent on the motion are reasonable. Doc. 355 at 9-10.

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). It is the movant's burden to establish entitlement to the amount requested. *Id.* The Eleventh Circuit explains,

> The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman [v. Hous. Auth. of Montgomery,* 836 F.2d [1292,] 1303 [(11th Cir. 1988)]. That burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."

11

*ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

### Hourly Rate

A reasonable hourly rate for an attorney's services "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger*, 10 F.3d at 781. The moving party must produce evidence that the requested rate "is in line with prevailing market rates." *Id.* In determining reasonableness of an attorney's hourly rate, a court also may draw on its own experience. *See Norman,* 836 F.2d at 1303.

Plaintiff's attorney, Ms. Berkowsky, requests the maximum hourly rate permitted under the PLRA, which is $237.00, contending she "has litigated prisoners' civil rights cases for two years," and before that, worked on similar cases as a law student. Doc. 349 at 19. However, counsel does not offer evidence of the prevailing market rates charged in similar circumstances. *See id.* Thus, the Court is unable to assess whether the rate requested is reasonable under the circumstances. *See Barnes*, 168 F.3d at 428 ("A district court should be mindful of its obligation to produce an order on attorneys fees that allows for 'meaningful review' by articulating the decisions made and supplying principled reasons for those decisions.").

12

**Hours Expended**

To establish the number of hours expended on the issue was reasonable, a movant "must provide a billing statement that sets out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity." *Laube v. Allen*, 506 F. Supp. 2d 969, 984 (M.D. Ala. 2007) (citing *Barnes*, 168 F.3d at 427). Fee applicants must exercise "billing judgment," meaning they should omit hours that are excessive, redundant, or otherwise unnecessary, regardless of experience or skill. *Barnes*, 168 F.3d at 428.

Plaintiff's counsel provides a chart documenting the time spent on the discovery dispute (Doc. 349-7). But some of the descriptions are not set forth "with sufficient particularity" to enable the Court to assess whether the time spent was reasonable under the circumstances. For instance, about half the time sought to be reimbursed (22.48 hours) was spent on the "motion to compel," but it is not clear in all instances what the precise activity was. Some entries reference a specific task (HIPAA research; drafting/editing; preparation of exhibits), while others simply say, "Motion to compel," with no further explanation. Doc. 349-7. In short, based on the documentation provided, the Court cannot assess whether Ms. Berkowsky exercised "billing

13

judgment" or whether the time spent on each discrete task was reasonable under the circumstances. *See Barnes*, 168 F.3d at 428.

### Conclusion on Attorney's Fees Request

The Court finds Plaintiff is entitled to attorney's fees for successfully moving to compel the FDOC to produce unredacted personnel records and communications. *See* Fed. R. Civ. P. 37(a)(5)(A). However, given the documentation in support of the requested amount is lacking, as noted, the Court will direct the parties to confer in good faith to stipulate to reasonable attorney's fees that should be awarded to Plaintiff for filing the motion. If the parties are unable to agree, Plaintiff may file a motion supported by appropriate documentation.

### Motion for Extension of Deadlines

The FDOC moves for a 14-day extension of the remaining expert disclosure deadlines set forth in the operative case management and scheduling order (Doc. 345). Doc. 356 at 3. The motion is unopposed, and, therefore, due to be granted.

Accordingly, it is

**ORDERED:**

1. Plaintiff's motion to compel (Doc. 349) is **granted** to the extent that the FDOC must disclose, within **five days** of the date of this Order,

unredacted personnel records and communications responsive to numbers 9 and 12 of Plaintiff's fourth set of requests for production of documents.[5]

2. Plaintiff's request for attorney's fees incurred in bringing the motion to compel is **granted**.

3. By **December 28, 2022**, the parties shall confer *in good faith* to stipulate to reasonable attorney's fees that should be awarded to Plaintiff. The parties shall file a joint notice by **December 30, 2022**, disclosing the amount agreed upon. If the parties are unable to agree, Plaintiff may file a motion with supporting documentation by **January 6, 2023**.

4. The FDOC's unopposed motion for extension of the outstanding expert disclosure deadlines (Doc. 356) is **granted**. The FDOC must disclose its expert report(s) by **December 19, 2022**, and Plaintiff must respond with any rebuttal report(s) by **January 17, 2023**. The remainder of the deadlines in the Court's Second Amended Case Management and Scheduling Order (Doc. 345) remain unchanged.

---

[5] As noted, the FDOC may redact personal identifying information in accordance with Rule 5.2 of the Federal Rules of Civil Procedure.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of December 2022.

                                                BRIAN J. DAVIS
                                        United States District Judge

Jax-6
c:
Counsel of Record