UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM H. MELENDEZ,

        Plaintiff,

v.                                                      Case No. 3:20-cv-1023-BJD-JBT

RICKY D. DIXON, et al.,

        Defendants.
_____

**<u>ORDER</u>**

This cause is before the Court on (1) Plaintiff's supplement to his request for attorney's fees (Doc. 363; Att'y Fees Mot.) with respect to his previously granted motion to compel (Doc. 349) and (2) Plaintiff's motion to compel responses to a Rule 45 subpoena or to exclude evidence and testimony related to the subpoenaed records (Doc. 376; Mot. to Compel).

**I.    Attorney's Fees Motion**

By order dated December 16, 2022, the Court granted Plaintiff's motion to compel the Florida Department of Corrections (FDOC) to disclose certain documents. *See* Order (Doc. 357). Plaintiff sought an award of attorney's fees for bringing the motion. The Court found Plaintiff was entitled to recover reasonable attorney's fees but found Plaintiff had not sufficiently demonstrated the amount requested ($8,117.25) was reasonable. *Id.* Thus, the

Court directed Plaintiff's counsel to confer in good faith with counsel for the FDOC to settle on a fair amount and, if negotiations were unsuccessful, to file a motion with supporting documentation showing the rate requested and the hours expended are reasonable. *Id.* The parties were unable to agree on a fair amount. *See* Notice (Doc. 361); Att'y Fees Mot. at 2-3. Plaintiff seeks to recover attorney's fees in the amount of $8,117.25 for spending just over 34 hours on the motion to compel at the PLRA (Prison Litigation Reform Act) statutory maximum hourly rate of $237.00 per hour. *See* Att'y Fees Mot. at 2-3.

The Supreme Court has explained the calculation of attorney's fees as follows:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar calculation (hourly rate multiplied by the number of hours expended) governs the attorney's fees analysis, though courts may consider, as relevant, the factors set forth in

*Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1] *See Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 164 (11th Cir. 2008) (citing *Hensley*, 461 U.S. at 436-37).

### Hourly Rate

A reasonable hourly rate for an attorney's services "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The moving party must produce evidence that the requested rate "is in line with prevailing market rates." *Id.* In determining reasonableness of an attorney's hourly rate, a court also may draw on its own expertise. *See Norman,* 836 F.2d at 1304. Regardless of the prevailing market rate for an attorney's services, however, the PLRA limits the amount of attorney's fees a party may recover: "No award of attorney's fees … shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3).[2]

---

[1] Generally, the *Johnson* factors are subsumed in the lodestar calculation. *See Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988).

[2] The parties agree that the PLRA applies and that the maximum hourly rate under the PLRA for the relevant time is $237.00. Under section 3006A of Title 18, the hourly rate in 2022 was set at $158.00. *See* Criminal Justice Act (CJA)

The attorney who handled the motion compel, Ms. Berkowsky, explains she is a third-year attorney who litigates exclusively civil rights actions on behalf of prisoners and victims of police violence for the MacArthur Justice Center (MJC). *See* Att'y Fees Mot. at 7. Prior to graduating *cum laude* from Northwestern Pritzker School of Law, Ms. Berkowsky served for two years as a clinical student under the supervision of one of Plaintiff's other attorneys, Alexa Van Brunt. *Id.* Ms. Berkowsky cites a slew of Florida district court cases, which have found an hourly rate of over $250.00 for a third-year attorney to be reasonable, but none of the cases were in the Jacksonville Division of the Middle District. *Id.* at 8-9 (citing cases). However, she also contends that the law firm of Nelson Mullins recently was awarded fees in a case pending in the circuit court in Nassau County "in which the hourly rates of $375 and $300 were found to be reasonable for third-year associates." *Id.* at 9.

Ms. Berkowsky further provides the declaration of the Executive Director of Uptown People's Law Center (UPLC) (Doc. 363-2; Pl. Ex. B), Alan Mills, who avers the PLRA statutory maximum hourly rate, which Ms. Berkowsky seeks, "is significantly lower than the market rate for attorneys of her experience in the Chicago-area." *See* Pl. Ex. B ¶10. The prevailing market

---

Guidelines, available at https://www.uscourts.gov/rules-policies (last visited Apr. 20, 2023).

rate for an attorney in Chicago is not determinative of a reasonable hourly rate for an attorney of the same experience practicing in Jacksonville. However, Mills offers helpful information about Ms. Berkowsky's skills, experience, and reputation. Mills avers the "MJC is considered to be a leading national civil rights organization by those in the field." *Id.* ¶ 8. Additionally, Mills contends that, given Ms. Berkowsky has focused her three-year legal career and nearly half of her law school career "on a highly specialized area of law" (civil rights of prisoners), she "has far more experience litigating prisoners' rights cases in the few years she has been practicing than do lawyers with decades of experience." *Id.* ¶¶ 11, 12.

In its response (Doc. 370; FDOC Resp.), the FDOC contends Ms. Berkowsky's requested hourly rate is excessive, noting that she is a third-year attorney seeking the maximum PLRA rate—the same amount a seasoned lawyer would be entitled to recover—and that Mills's declaration speaks to the reasonable market rate for civil rights attorneys in Chicago, not in Jacksonville. *See* FDOC Resp. at 3-4. The FDOC cites no authority for the suggestion that a lawyer with three years of experience and a lawyer with ten years of experience should not both be permitted to recover the maximum PLRA rate. *See id.* at 4. Moreover, one of the two cases on which the FDOC relies permits the conclusion that a rate of more than $237.00 is reasonable for

5

a lawyer with three years of experience in this general region of Florida. *See EEOC v. Chalfont & Assocs. Grp., Inc.*, No. 6:19-cv-1304-ORL-78GJK, 2020 WL 1433054, at *4 (M.D. Fla. Mar. 24, 2020) (implicitly finding that a reasonable hourly rate for an attorney in Orlando with one to three years of experience was $250.00 in 2020).

Upon review, the Court finds the maximum PLRA rate of $237.00 is reasonable under the circumstances. Ms. Berkowsky has expertise handling civil rights cases on behalf of prisoners, solely dedicating her practice to such matters. Though she provides no relevant comparators for the Court to consider (i.e., a reasonable hourly rate for a third-year lawyer focusing solely on civil rights cases in the Jacksonville Division of the Middle District), considering its own expertise and judgment, the Court is persuaded that a third-year lawyer in Jacksonville with expertise in civil rights matters reasonably could charge a client more than $237.00 per hour for her services.

For the reasons stated, the Court finds the PLRA rate of $237.00 is reasonable.

**Hours Expended**

To establish the number of hours expended on a motion was reasonable, a movant "must provide a billing statement that sets out with sufficient particularity the general subject matter of the time expenditures so that the

district court can assess the time claimed for each activity." *Laube v. Allen*, 506 F. Supp. 2d 969, 984 (M.D. Ala. 2007) (citing *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)). Fee applicants must exercise "billing judgment," meaning they should omit hours that are excessive, redundant, or otherwise unnecessary, regardless of experience or skill. *Barnes*, 168 F.3d at 428. As such, "[i]t is appropriate for [a] court to exclude excessive, redundant, and unnecessary hours; hours which are inadequately documented; and hours which would be unreasonable for an attorney to bill the client or opposing counsel in the exercise of good billing judgment." *Access for the Disabled, Inc. v. Missouri Mart, Inc.*, No. 8:05-cv-392-T-23MSS, 2006 WL 5432711, at *2 (M.D. Fla. Dec. 7, 2006) (citing *Hensley*, 461 U.S. at 434).

Once the fee applicant produces adequate billing records, "[t]he fee opponent then 'has the burden of pointing out with specificity which hours should be deducted.'" *EEOC*, 202 WL 1433054, at *2 (alteration in original) (quoting *Rynd v. Nationwide Mutual Fire Ins. Co.*, No. 8:09-cv-1556-T-27TGW, 2012 WL 939387, *3 (M.D. Fla. Jan. 25, 2012)).

In her renewed motion, Ms. Berkowsky provides a more detailed billing chart than that offered with the motion to compel (Doc. 363-1; Pl. Ex. A). Of the 34.25 hours billed, Ms. Berkowsky spent 24.03 hours on tasks related to writing, editing, and preparing to file the motion to compel, including

7

reviewing relevant records and researching various legal issues. *See* Pl. Ex. A at 2-3. The remainder of the time billed was spent reviewing production responses, flagging and researching issues, and conferring with opposing counsel, which included discussions about a revised HIPAA agreement that would cover the information the FDOC wanted to redact from the subject records. *See id.* at 2.

The FDOC contends the number of hours billed was not reasonable because there is no itemization of tasks completed, more time was spent than was necessary to prepare a "very simple motion," counsel "engages in block billing and duplicative efforts," and editing the HIPAA agreement was not pertinent to the motion. FDOC Resp. at 5-8. The FDOC asks the Court to cap the total amount of hours at 5.5, which is the number of hours the Orlando Division found to have been reasonable "for a highly skilled litigator who brought a simple motion to compel." *See id.* at 8 (citing *Rodriguez v. GEICO Gen. Ins. Co.*, No. 6:19-cv-1862-ORL-40GJK, 2020 WL 1451659, at *1, 3 (M.D. Fla. Mar. 25, 2020)).

Many of the FDOC's arguments are unconvincing. Plaintiff does indeed provide a chart that explains the tasks completed in preparing the motion to compel. *See generally* Pl. Ex. A. And given the number of email communications and phone calls between the parties and that the subject

8

disclosures involved potential HIPAA concerns, it does not appear the motion or the issues were "very simple." *See, e.g.*, Order (Doc. 357). *Cf. Rodriguez*, 2020 WL 1451659, at *1, 3 (noting the motion to compel was unopposed). In fact, HIPAA concerns appear to have been central to the parties' dispute. As the Court noted in its Order granting the motion to compel, the FDOC redacted information from the subject documents in part because the HIPAA agreement the parties entered did not cover the information and the FDOC refused to entertain a new or revised agreement that would. *See* Order (Doc. 357) at 6-7. As such, the FDOC's contention that the HIPAA entry (on the billing chart) was not pertinent to the motion to compel is unconvincing. *See* FDOC Resp. at 7-8.

The Court finds one of the FDOC's points compelling with respect to the number of hours billed. A review of the billing chart shows some "block billing" and what appear to be redundant or repetitive tasks. *See* Pl. Ex. A at 2-3. An attorney "is not required to record in great detail how each minute of [her] time was expended." *Hensley*, 461 U.S. at 437 n.12. However, at a minimum, counsel should "identify the general subject matter of [her] time expenditures." *Id.* "Block billing" has been criticized for "mak[ing] judicial review unnecessarily difficult" because such billing practices "lump[] together multiple activities in a single entry with no indication how much time was spent on each task."

*Zachloul v. Fair Debt Collections & Outsourcing*, No. 8:09-cv-128-T-27MAP, 2010 WL 1730789, at *3 (M.D. Fla. Mar. 19, 2010) (citing *Hensley*, 461 U.S. at 437). *See also Trove Brands, LLC v. JH Studios, Inc.*, No. 8:19-cv-1809-KKM-AAS, 2022 WL 827789, at *4 (M.D. Fla. Mar. 3, 2022) ("When attorneys include multiple tasks in a single time entry, it is nearly impossible for a reviewing court to determine what time was spent on what task.").

Most of the hours Ms. Berkowsky recorded (23.76) were dedicated to writing, editing, or preparing to file the motion to compel. *See* Pl. Ex. A at 2-3. But seven of the entries (totaling 18.91 hours) are described in a "block," with no indication of how much time was spent on each task. *Id.* at 2. Additionally, some of the tasks included in the "block" description appear redundant. For instance, prior to drafting the motion to compel, Ms. Berkowsky spent time "review[ing] production to flag issues," and "[r]esearching issues." *Id.* When drafting and editing the motion to compel, Ms. Berkowsky again "[r]eview[ed] records produced" and "[r]esearch[ed] the validity of the defenses and claims" the FDOC raised. *Id.* The Court acknowledges this is a complex case that has required extensive discovery, and research is not a static endeavor but a recursive process. However, these entries appear duplicative. Finally, five of the last six entries in the billing chart are not sufficiently explained but rather vaguely say, "see above," appear clerical in nature, or appear redundant (1.71

10

for "Docketing/Pleadings" and 2.14 for the same; .30 for "calculating hours"; .12 for "finalizing exhibits"; and .58 for editing). *Id.* at 3.

For the reasons noted, the Court cannot conclude the total hours expended on the motion to compel (34.25) were reasonable and finds a reduction is appropriate. Given the use of "block billing" for a majority of the hours spent on the motion to compel (23.76), which includes entries that appear duplicative of others, the Court finds an across-the-board reduction is warranted. *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) ("When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut.").

The Court will reduce the number of hours Ms. Berkowsky claims by thirty percent (from 34.25 to 23.97).

### **Conclusion on Attorney's Fees**

Plaintiff is entitled to recover from the FDOC attorney's fees incurred in bringing the subject motion to compel in the amount of $5,680.89 (23.97 hours multiplied by an hourly rate of $237.00).

## II. Motion to Compel Subpoena Responses or to Exclude Related Evidence and Testimony

Plaintiff asks the Court to compel non-party Carl Wesley Kirkland, Jr. to produce documents responsive to a Rule 45 subpoena, which Plaintiff served

11

on January 4, 2023, or alternatively to exclude evidence and testimony relating to the undisclosed documents under Rule 37(c)(1). *See* Mot. to Compel at 1. Plaintiff also seeks to recover reasonable attorney's fees incurred in bringing the motion under Rule 37(a)(5).[3] *Id.* In response (Doc. 381; Mot. to Compel Resp.), the FDOC contends it produced the requested documents the same day the motion was filed and before Kirkland's second deposition was taken.[4] *See* Mot. to Compel Resp. at 2, 6. Plaintiff filed a reply (Doc. 384) but did not receive leave of Court before doing so. As such, the reply is due to be stricken. *See* M.D. Fla. R. 3.01(d) ("Without leave, no party may file a reply directed to a response except a response to a motion for summary judgment.").

Given Plaintiff received a response to the subpoena, the motion is due to be denied as moot.

---

[3] Plaintiff does not explain whether Rule 37 subparagraphs (a)(5) or (c)(1) would apply in the context of a party seeking to enforce a non-party subpoena served under Rule 45. *See, e.g.*, *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 672 (N.D. Fla. 2010) ("Rule 37(a) does not appear to govern motions to compel production of documents made pursuant to Rule 45."). The Court need not decide whether Rule 37 applies under the circumstances because it appears the motion is moot.

[4] The FDOC identified Kirkland as a hybrid expert witness. *See* Mot. to Compel at 2. As such, Plaintiff served a Rule 45 subpoena "to establish the foundation for the opinion testimony [Kirkland] intends to proffer at trial." *Id.* at 3. *See also* Doc. 376-1 (subpoena). The FDOC initially moved to quash the subpoena on numerous grounds, *see* Doc. 368, but, after conferring with opposing counsel, withdrew the motion, *see* Doc. 373.

## III. Conclusion

Accordingly, it is now

**ORDERED:**

1. The FDOC must pay Plaintiff attorney's fees in the amount of **$5,680.89**.

2. Plaintiff's motion to compel responses to a Rule 45 subpoena or to exclude evidence and testimony related to the subpoenaed records (Doc. 376) is **DENIED as moot**.

3. Plaintiff's unauthorized reply (Doc. 384) is **STRICKEN**.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of April 2023.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record