UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM H. MELENDEZ,

               Plaintiff,

v.                                       Case No. 3:20-cv-1023-BJD-JBT

RICKY DIXON, et al.,

               Defendants.

_____

## **ORDER**

This cause is before the Court on the following motions: (1) Plaintiff's motion to strike the expert report and limit the testimony of the Florida Department of Correction's (FDOC's) retained expert, Dr. Dean Aufderheide (Doc. 389); (2) Plaintiff's motion to limit the testimony of the FDOC's non-retained employee experts, Rusty McLaughlin and Carl Wes Kirkland (Doc. 390); (3) the FDOC's motion to exclude expert testimony of Plaintiff's retained expert Dr. Terry Kupers (Doc. 391); and (4) Plaintiff's motion to limit the testimony of the FDOC's non-retained experts Dr. Jonathan Greenfield and Dr. George Emanoilidis (Doc. 392).

Before addressing the motions, the Court notes that admissibility questions generally should be ruled upon as they arise during trial "to allow questions of foundation, relevancy, and prejudice to be resolved in context." *See*

*Stewart v. Hooters of Am., Inc.*, No. 8:04-cv-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007). Indeed, given Rule 702's "permissive backdrop," courts generally should rely "upon lawyer-adversaries and sensible triers of fact to evaluate conflicts." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). "[A]fter *Daubert* … the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. As such, at trial, any party may seek reconsideration of the evidentiary rulings in this Order in light of the evidence presented and shall make contemporaneous objections when evidence is elicited.

Under the Federal Rules of Evidence,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In performing its "gatekeeping function," a district court must consider whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Delva*, 922 F.3d 1228, 1251 (11th Cir. 2019) (footnote omitted) (quoting *United States v. Holt*, 777 F.3d 1234, 1265 (11th Cir. 2015)). These three elements have some overlap but are distinct. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

## A. Dr. Aufderheide's Expert Report

Plaintiff moves to strike the expert report and limit the testimony of Dr. Aufderheide on two grounds: the report was not timely disclosed under Rule 26(a)(2)(B); and Dr. Aufderheide's opinions "rest on an unreliable methodology and are unfounded and unduly prejudicial." Doc. 389 at 1-2.

### i.    Timing of Disclosure

In its response to Plaintiff's motion (Doc. 420), the FDOC concedes it disclosed Dr. Aufderheide's Rule 26(a)(2)(B) report late but argues the late disclosure was "substantially justified" and harmless because it initially disclosed Dr. Aufderheide as a Rule 26(a)(2)(C) witness, and Plaintiff's counsel received the report before Dr. Aufderheide's full-day deposition. *See* Doc. 420 at 3-4. Under Rule 37, "[i]f a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In other words, a party who fails to timely disclose information "may still be allowed to use that information … provided that the failure was substantially justified or is harmless." *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017) (internal quotation marks omitted). The party resisting the "automatic sanction" under Rule 37 has the burden to show substantial justification or harmlessness. *Id.*

The parties agree the report was disclosed late even if they disagree on the reason or justification for the lateness. Regardless of whether the late disclosure was justified, the Court finds the FDOC demonstrates its late disclosure was harmless under the circumstances. Plaintiff received the report

before Dr. Aufderheide's deposition—albeit the day before. Plaintiff did not seek an extension of the discovery deadline or to reschedule the deposition. Plaintiff's counsel, Alexa Van Brunt, deposed Dr. Aufderheide from 9:07 a.m. until 4:46 p.m. (with lunch and comfort breaks). *See* Doc. 389-5 at 1, 315. To counsel's credit, her questions demonstrated her preparedness and effectiveness. The cases on which Plaintiff relies are, thus, distinguishable. *See Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 719 (11th Cir. 2019) (affirming partial exclusion of a supplemental report disclosed the day before the expert's deposition because "the severity of the harm" was compounded when the expert "left his deposition after only three hours without the prior agreement of the parties"); *Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 684 (M.D. Fla. 2010) (finding a late disclosed expert report was not harmless because the defendant had no opportunity to re-depose the expert after receiving the report). Accordingly, the Court finds Dr. Aufderheide's report is not due to be excluded for being disclosed late, and Plaintiff's motion is due to be denied as to this request.

### ii.   **Admissibility of Opinions**

In its amended hybrid witness and impeachment disclosures (Doc. 367-3), the FDOC represents as follows with respect to Dr. Aufderheide's background and expected testimony:

> Dr. Aufderheide, clinical and forensic psychologist with a board-certification in correctional psychology, served the Department as its Chief Mental Health Services at all times alleged in Plaintiff's Complaint. His testimony will include issues pertaining to restrictive housing and effects on mental health, non-suicidal self-injury, risk assessment and proper documentation, and classification and management tools for serial self-injurious behaviors. While working for the Department, Dr. Aufderheide served as a member of multiple ACA[1] committees and can speak to the development of the national accreditation standards and training materials utilized by FDOC. Dr. Aufderheide will also testify regarding the mental health care Plaintiff received while confined in close management [(CM)], and the measures FDOC took to ensure compliance with the Department's rules and procedures.

Doc. 367-3 at 7. In his report, Dr. Aufderheide states that he was retained to "provide an expert opinion pertaining to [Plaintiff's] access to necessary mental health care during his current incarceration in the [FDOC], and whether the mental health and services he received were provided in accordance with the Department's mental health policy and procedures, for which [Dr. Aufderheide] was responsible." Doc. 389-1 at 5.

Plaintiff does not challenge Dr. Aufderheide's proposed testimony regarding the procedures and policies in place at the FDOC for an inmate with

---

[1] American Correctional Association.

mental illness to access and receive necessary mental health treatment. *See generally* Doc. 389. Rather, Plaintiff argues Dr. Aufderheide's purported opinions—expressed in his report and deposition testimony—are unreliable in part or go beyond the parameters set forth in the FDOC's disclosure. *See id.* at 10.

First, Plaintiff argues "Dr. Aufderheide should not be permitted to opine on [Plaintiff's] mental health or mental health treatment because he lacks a reliable methodology to form those opinions." *Id.* For instance, Plaintiff challenges Dr. Aufderheide's opinion that Plaintiff specifically—as opposed to inmates generally—has had "unimpeded access to necessary mental health treatment and services commensurate with his assessed mental health needs." *Id. See also* Doc. 389-1 at 11. Plaintiff maintains Dr. Aufderheide's opinion is unreliable because Dr. Aufderheide did not himself evaluate Plaintiff but rather bases his opinion on a review of a "cherrypicked summary of Plaintiff's [FDOC] records" (a "timeline") rather than a review of medical and other records that "bear on the mental health treatment [he] received." *See* Doc. 389 at 12, 14. According to Plaintiff, the timeline itself is unreliable because it was created for this litigation and "does not accurately reflect the evidence in this case," and Dr. Aufderheide did not independently "vet" the information included (or excluded). *Id.* at 15.

Plaintiff does not cite to or rely upon Rule 703 in his motion, but his argument that Dr. Aufderheide improperly relies on a timeline as opposed to the source documents (i.e., Plaintiff's medical records) implicates that Rule, which provides as follows, in pertinent part:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Fed. R. Evid. 703.

In its response, the FDOC concedes that Dr. Aufderheide was not retained to offer an opinion "on Plaintiff's mental health." *See* Doc. 420 at 5. Moreover, Dr. Aufderheide himself acknowledges he cannot ethically do so given he has never evaluated Plaintiff. *See* Doc. 389-1 at 32, 78; Doc. 389-5 at 43-44. However, in apparent contradiction, the FDOC also argues Dr. Aufderheide is qualified to offer a reliable opinion that "Plaintiff's mental health treatment and accessibility to mental health care" was within FDOC's "guidelines and protocols." *See* Doc. 420 at 6. The FDOC contends Dr. Aufderheide reached such an opinion based on "a review of Plaintiff's medical records" and other institutional records. *Id.* Additionally, in apparent response to the criticism that Dr. Aufderheide relied solely on the timeline, the FDOC says, "Plaintiff's *medical records* are a type of fact and data that is both reliable

and reasonably relied upon ... in forming [an] opinion as to the accessibility and appropriateness of Plaintiff's mental health care." *Id.* at 10 (emphasis added).

The fallacy in the FDOC's argument regarding the timeline is that Dr. Aufderheide did not review Plaintiff's medical records. He references no medical records in the section of his report in which he identifies the documents he reviewed in preparing the report, *see* Doc. 389-1 at 7-8, and he testified at deposition that he relied primarily on the timeline, which is "an extract of the electronic medical record as it pertains to [Plaintiff's] clinical contacts with mental health," *see* Doc. 389-5 at 39-40, 109-10. Dr. Aufderheide said he reviewed Plaintiff's electronic medical record for "[a] few hours," though he could not say with any specificity which items he reviewed or why, other than to say he reviewed some items "that [he] thought ... might be helpful ... to formulate [his] opinion." *Id.* at 41, 286, 307-09.

Neither Dr. Aufderheide nor the FDOC contends that the timeline Dr. Aufderheide relied upon is the kind of data "experts in the ... field would reasonably rely on ... in forming an opinion on the subject." *See* Fed. R. Evid. 703. Of particular concern is that Dr. Aufderheide opines, based purely on the timeline, that the FDOC mental health providers have provided Plaintiff with "appropriate care" and appear to have appropriately diagnosed him, but also

9

concedes neither he nor another medical provider ethically could make a diagnosis without examining a patient. *See* Doc. 389-5 at 33, 43-44, 78-82, 109-10, 261-62, 267, 286-87.

To the extent Dr. Aufderheide simply parrots the opinion or conclusions of others who may be considered experts, his opinion is not admissible. *See, e.g.*, *Schoen v. State Farm Fire & Cas. Co.*, No. CV 21-00265-JB-N, 2022 WL 16586689, at *7 (S.D. Ala. Nov. 1, 2022) ("If an expert simply parrots another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion, then ... the expert thereby becomes little more than a backdoor conduit for an otherwise inadmissible statement." (alteration in original)); *La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co.*, 586 F. Supp. 3d 1300, 1306 (S.D. Fla. 2022) ("[Rule 703] does *not* permit an expert to 'simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon.'" (emphasis in original)).

Accordingly, the Court finds Plaintiff's motion is due to be granted in part to the extent that Dr. Aufderheide may not offer opinions he reached based solely on the timeline, including that Plaintiff has had unimpeded access to necessary mental health care in the FDOC, that Plaintiff "possibly … may be

malingering his symptoms," that Plaintiff may be self-harming for secondary gain (or for "instrumental" reasons), or that Plaintiff's mental health providers have (or appear to have) properly, accurately, or appropriately diagnosed him. *See* Doc. 389-1 at 21, 27; Doc. 389-5 at 84.[2]

Second, Plaintiff argues Dr. Aufderheide should not be permitted to offer opinions on matters that go beyond his clinical expertise as stated in the FDOC's disclosure. *See* Doc. 389 at 17. Plaintiff notes Dr. Aufderheide's opinions offered in his report and at his deposition stray beyond those identified in the disclosure because he addresses or opines on the following: Plaintiff's gang affiliation as it relates to his access to constitutionally adequate mental health care at the FDOC; Plaintiff's dangerousness as it relates to his housing placement or access to constitutionally adequate mental health care; Plaintiff's presumed financial incentive in this litigation; and prior litigation and settlements (not involving Plaintiff).[3] *Id. See also* Doc. 389-1 at 10, 25, 29; Doc. 389-5 at 67-73, 85-86.

---

[2] Not only does the FDOC not argue or demonstrate that the timeline Dr. Aufderheide reviewed is the kind of data "experts in the … field would reasonably rely on … in forming an opinion on the subject," *see* Fed. R. Evid. 703, but his opinions on these topics appear speculative or conjectural, *see Daubert*, 509 U.S. at 590 (explaining the word "knowledge" in Rule 702 "connotes more than subjective belief or unsupported speculation").

[3] It appears from Dr. Aufderheide's deposition testimony and the FDOC's response that Dr. Aufderheide mentions other litigation to explain the context in which he "form[ed] and implement[ed] appropriate mental health

11

The FDOC appears to concede Dr. Aufderheide's report strays beyond the scope of the disclosure by clarifying in its response to Plaintiff's motion that Dr. Aufderheide has been retained "as an expert to discuss the mental health treatment programs and procedures he developed for [FDOC] and provide an opinion that Plaintiff's treatment by the [FDOC] [was] guided and followed by [sic] these protocols." Doc. 420 at 1-2, 5-7. *See also* Doc. 389-5 at 30 (Dr. Aufderheide testifying at deposition that he will offer opinions on Plaintiff's "access to necessary mental health care while incarcerated in [FDOC]" and whether the mental health treatment Plaintiff received "was provided in accordance with [FDOC's] policies and procedures").[4] Accordingly, Plaintiff's motion is due to be denied in part as moot as to this argument.

---

procedures and protocols at [FDOC]." *See* Doc. 420 at 8. *See also* Doc. 389-5 at 36-37. In other words, the information appears to have been mentioned merely as relevant to his background and experience. To the extent Dr. Aufderheide intends to offer legal conclusions regarding whether Plaintiff's mental health treatment complies with the law, such opinions would be inadmissible. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness … may not testify to the legal implications of conduct; the court must be the jury's only source of law.").

[4] Page numbers for deposition transcripts correspond to those of the document itself, *not* the Court's electronic case management system.

## B.     FDOC's Hybrid Witnesses McLaughlin & Kirkland

McLaughlin and Kirkland are employed by the FDOC and have been disclosed as non-retained experts under Rule 26(a)(2)(C).[5] Plaintiff seeks an order barring McLaughlin and Kirkland from "offering opinions about Plaintiff's conduct and conditions, [FDOC's] ACA accreditation, and how [FDOC's] restrictive housing compares to those of other states." *See* Doc. 390 at 1. Plaintiff argues these witnesses should be "limited to opining based on their personal observations and knowledge" because they are non-retained experts under Rule 26(a)(2)(C) who did not disclose expert reports under Rule 26(a)(B)(4),[6] and because they do not satisfy the requirements for expert testimony under Rule 702. *See id.* at 4-5.

A witness disclosed as an expert but who is not "retained or specially employed to provide expert testimony" is not required to disclose a written report. Fed. R. Civ. P. 26(a)(2)(C). *See also Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253 (4th Cir. 2022) ("Hybrid witnesses—fact witnesses with expertise that will inform their

---

[5] These witnesses also were disclosed under Rule 30(b)(6). *See* Doc. 390-2 (deposition notice). The Court's ruling in this Order is limited solely to these witnesses' proposed testimony in their roles as non-retained or "hybrid" witnesses.

[6] There is no Rule 26(a)(B)(4).

testimony—do not fall under Rule 26(a)(2)(B)'s purview."). Instead, a party must disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Plaintiff does not contend the FDOC's disclosure is incomplete or non-compliant. *See* Doc. 390 at 2, 4. Rather, Plaintiff argues McLaughlin and Kirkland purport to offer opinions beyond the scope of their day-to-day responsibilities. *See id.* at 6-7, 13.

Hybrid fact/expert witnesses "must testify from the personal knowledge they gained on the job." *See Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017). The First Circuit offers helpful language demarcating the distinction between a Rule 26(a)(2)(B) "retained" expert and a Rule 26(a)(2)(C) "non-retained" expert: "In order to give the phrase 'retained or specially employed' any real meaning, a court must acknowledge the difference between a percipient witness who happens to be an expert and an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony." *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011). Whether an expert is properly considered "non-retained" and therefore exempted from the report requirement depends on the nature of the opinion he intends to offer and how he formulated that opinion:

14

> [W]here . . . the expert is part of the ongoing sequence of events and arrives at his causation opinion [in that capacity], his opinion testimony is not that of a retained or specially employed expert. If, however, the expert comes to the case as a stranger and draws the opinion from facts supplied by others, in preparation for trial, he reasonably can be viewed as retained or specially employed for that purpose, within the purview of Rule 26(a)(2)(B).

*Id.* at 7 (internal citations omitted).

When a witness purports to offer opinions "not grounded in [his] own experience," the testimony must meet the standard for admission under Rule 702 and *Daubert*. *See Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011). For instance, when a witness provides opinion testimony based on a hypothesis, as opposed to personal experience, it "crosses the line from lay to expert testimony" and must satisfy Rule 702. *Id.* at 1317-18.

Plaintiff contends McLaughlin and Kirkland should be limited to offering opinions "based only on their personal knowledge of [FDOC] policy, protocol, and procedure, gained from their experience" and not "about the content of Plaintiff's disciplinary records, the privileges he may – or may not – have actually received in [CM], [FDOC's] purported ACA accreditation, and any testimony about [FDOC] polices unrelated to their employment." *See* Doc. 390 at 5-6. As to each witness, Plaintiff takes issue with discrete portions of their proffered testimony. As such, the Court will address each in turn.

### i.    McLaughlin

In its disclosure, the FDOC represents that McLaughlin will testify regarding classification matters in his role as Bureau Chief of Inmate Classification Management, *see* Doc. 390-1 at 5, a position he has held for about fifteen years, *see* Doc. 390-3 at 19. Given his background, McLaughlin "is experienced in the conditions inmates are subjected to in confinement status." Doc. 390-1 at 5. Plaintiff does not argue McLaughlin is not qualified to offer opinions regarding "classification policies and procedures." *See* Doc. 390 at 6-7. Plaintiff takes issue with the following categories of testimony: Plaintiff's disciplinary record and a specific incident involving Officer Williams of which McLaughlin has no independent personal knowledge; the interrelationship between mental health and housing; the privileges Plaintiff received or was denied when housed in CM; ACA accreditation; and whether the FDOC's use of CM housing and its attendant conditions are constitutional. *Id.* at 7-9, 14-15.

The FDOC does not specifically address these categories of contested testimony but rather broadly contends that McLaughlin's "technical training and specialized knowledge of . . . classification management systems" qualifies him to offer the reliable and helpful opinions proffered. *See* Doc. 421 at 9-11. Given McLaughlin's experience and background and his deposition testimony,

the Court concludes he may offer opinions regarding relevant FDOC classification policies or rules, the process for moving an inmate into and out of CM status, and privileges available to inmates according to their housing classification. *See, e.g.*, Doc. 390-3 at 18-19, 26, 28-29, 35, 39, 55-56, 70-73, 146-47 (explaining at his deposition that he has "experience and knowledge on confinement issues … [and] why [the FDOC does] things in certain instances"; the general conditions of confinement in CM cells and whether those conditions comply with applicable rules; and the movement of inmates through CM).[7]

McLaughlin may not, however, offer expert testimony on matters outside his admitted areas of expertise, that are based purely on speculation or conjecture without factual foundation, or that are within the jury's province, including inmate discipline and security, mental health, ACA accreditation, or whether CM housing is "constitutional." *See, e.g.*, *id.* at 23, 50, 63, 91, 128-30, 175-77, 202-05 (testifying that he is not "responsible for [ensuring compliance with] use of force [rules]" and is "not the ACA expert"). *See also Montgomery*, 898 F.2d at 1541; *Frazier*, 387 F.3d at 1261 ("[I]t remains a basic foundation for admissibility that '[p]roposed [expert] testimony must be supported by

---

[7] Whether McLaughlin will be permitted to respond to specific hypotheticals or to opine on Plaintiff's classification status, the privileges he received in CM, or incident/disciplinary reports Plaintiff incurred is best addressed in context at trial in consideration of the evidence adduced. As such, the Court will defer ruling on that portion of Plaintiff's motion.

appropriate validation—*i.e.,* good grounds, based on what is known.'" (internal quotation marks omitted) (quoting *Daubert*, 509 U.S. at 590)). Accordingly, Plaintiff's motion will be granted in part.

### ii.  Kirkland

The FDOC contends Kirkland will "testify based on his more than thirty years as an FDOC corrections professional including serving as the Bureau Chief of Security Operations." *See* Doc. 390-1 at 3. Kirkland has experience and knowledge regarding FDOC's "practices, procedures and policies involving individuals incarcerated at FDOC, including but not limited to … all inmates who are placed in confinement." *Id.* He will describe the profile of the FDOC's inmate population and the necessity for "close custody prisons." *Id.*

The Court will not summarize the entirety of the FDOC's disclosure as to Kirkland because Plaintiff challenges only two categories of Kirkland's proposed expert opinion testimony: how the FDOC's security policies compare to those of other states; and that Plaintiff is a violent person whose placement in CM is warranted. *See* Doc. 390 at 10-11, 15-16. The FDOC does not address these discrete components of Kirkland's proffered testimony in their response but rather clarifies that Kirkland's opinion testimony will relate to "subjects within [his] professional ken," including "whether there is a penological purpose for CM, the internal placement processes and privileges an inmate in

CM is entitled to, and the distinction from other types of restrictive housing such as AC [administrative confinement]." *See* Doc. 421 at 5, 11-12. Given this portion of Plaintiff's motion is unopposed, the Court finds the motion is due to be granted to the extent Kirkland may not offer opinion testimony on the FDOC's security policies compared to those of other states or that Plaintiff is a violent person whose CM placement is warranted.

### C.   Dr. Kupers's Expert Testimony

Defendant Dixon, on behalf of the FDOC, seeks to limit the testimony of Plaintiff's expert Dr. Kupers. *See* Doc. 391 at 1, 13. The FDOC argues Dr. Kupers should be limited to testifying about Plaintiff's mental health diagnosis and should not be permitted to offer "opinions on American prison systems or inmates in general" because he is not a "data scientist and his qualitative studies on inmates generally are not reliable or relevant." *Id.* at 13. Additionally, the FDOC argues, to the extent Dr. Kupers formed his opinions in reliance on "his generalized opinion of America's prison conditions," his testimony is inadmissible under Rule 703 "because psychiatrists do not generally rely upon such opinions to form their medical diagnoses." *Id.* at 3, 13. In response (Doc. 419), Plaintiff contends Dr. Kupers is "a nationally recognized psychiatric expert on the effects of solitary confinement on mental

health," who is being proffered as an expert to opine on the effect Plaintiff's prolonged CM confinement has had on his mental health. Doc. 419 at 1.

First, the Court finds Dr. Kupers is sufficiently "qualified to testify competently regarding the matters he intends to address." *See Delva*, 922 F.3d at 1251. His qualifications are explained in detail in his expert report dated September 16, 2021, and summarized in Plaintiff's response. *See* Doc. 391-1 at 21-40, 43-44. *See also* Doc. 419 at 4-5. Notably, the FDOC does not argue Dr. Kupers is not qualified to testify as an expert, nor does the FDOC contest the opinions offered in Dr. Kupers's multiple reports. *See generally* Doc. 391.

Rather, the FDOC challenges the reliability and relevance of some of Dr. Kupers's statements he made at his deposition in response to specific questions. *Id.* The FDOC says Dr. Kupers's deposition makes clear "that he intends to erroneously opine on matters and issues that fall outside of his medical expertise," including "blanket assertions that concern his book" about solitary confinement; relying on his own qualitative research without identifying a control group; and relying on third party social psychologists and reigning field standards of prison conditions, which themselves are hearsay and not relevant to Dr. Kupers's opinions about Plaintiff's mental health diagnoses. *Id.* at 3, 5, 7, 9.

It appears the FDOC misinterprets Dr. Kupers's deposition testimony or references discrete statements out of context. First, at his deposition, Dr. Kupers was asked to explain the book he published, which he references in the section of his September 16, 2019 report summarizing his background and qualifications. *See* Doc. 391-2 at 80; Doc. 391-1 at 43. The FDOC says Dr. Kupers's response to that deposition question "fails to meet Rule 702's helpfulness standard." *See* Doc. 391 at 7. But the response to the question itself contains no opinions related to Plaintiff; Dr. Kupers merely summarized his book. *See* Doc. 391-2 at 80-81. As such, it is unclear what opinion testimony the FDOC is asking the Court to exclude. Any specific testimony about Dr. Kupers's book that may be proffered or elicited at trial is best considered in context at that time.

To the extent the FDOC contends Dr. Kupers's research on "supermax prisons" is not relevant to the issues before the Court because it is unrelated to Dr. Kupers's mental health diagnoses of Plaintiff, the position is unconvincing. Dr. Kupers was retained to opine on more than just Plaintiff's present mental health diagnoses. He is being offered to "provide opinions about the repercussions of [Plaintiff's] confinement in [CM]" over an extended period. *See* Doc. 391-1 at 44. His opinions regarding the effect prolonged CM confinement has had on Plaintiff's mental health are informed by "research

21

and from [his] own and others' expert investigations for the courts[] about the harm of solitary confinement." *Id.* at 45, 63-66.

According to Dr. Kupers, "[s]olitary confinement exacerbates mental illness," and thus Plaintiff's extended stay in solitary confinement caused "more depression, more delusions, [and] more hallucinations," leading to self-harm. *See* Doc. 391-2 at 117. As such, Dr. Kupers's extensive research and experience related to solitary confinement are relevant.

Second, the FDOC contends Dr. Kupers testified at his deposition that his qualitative research did not have a control group. *See* Doc. 391 at 5. That is not accurate. Dr. Kupers explained that his research is qualitative (based on stories of people) as opposed to quantitative (based on sophisticated statistical methods).[8] *See* Doc. 391-2 at 95-93. He says both are "about equally as reliable and as important in the field." *Id.* at 96. Based on his qualitative research, which included a control group, he has found there is "very little self harm among adult men who are not in solitary confinement," while a "significant proportion of [inmates in solitary confinement] are self-harming." *Id.* Dr. Kupers explained that based on his research, he reached a "valid scientific conclusion … [that] more people in solitary confinement [] are self-harming

---

[8] Dr. Kupers acknowledges that he is not a data scientist, but he is "up to date on statistical methods in data science sufficiently to read critically the literature of medicine and psychiatry." *See* Doc. 391-2 at 104.

than … people who [are not] in solitary confinement." *Id.* at 96-97. The control group consisted of the people not in solitary confinement. *See id.*

Third, the FDOC argues Dr. Kupers's opinions are not reliable because they are based on a "regurgitation of third party data" that did not inform his diagnoses of Plaintiff and that he could not explain in detail at his deposition. *See* Doc. 391 at 9, 11. These arguments take Dr. Kupers's deposition testimony out of context or are based on a misunderstanding.[9] At his deposition, Dr. Kupers was asked why he cited (in his report) a particular article by Dr. Craig Haney, "a very prominent researcher in the field" whose published articles have a methodology and are peer reviewed. *See* Doc. 390-2 at 86, 90. Dr. Kupers explained the article he cited was a *summary* of research Dr. Haney conducted regarding "the detrimental effects of long-term isolation." *Id.* at 86-88, 90. The attorney continued asking Dr. Kupers to explain the methodology and data derived from "the study," but Dr. Kupers stressed multiple times he was not referring to a specific study but rather "a summary of all of the research that [Dr. Haney] was aware of." *Id.* at 91-93. That Dr. Kupers could not respond to the attorney's repeated questions that demonstrated a lack of understanding

---

[9] To the extent the FDOC maintains Dr. Kupers's reliance on third party data is not relevant to his opinions about Plaintiff, the Court finds the argument unpersuasive as already noted.

says nothing about the reliability of Dr. Kupers's opinions on the topic under discussion.

To the extent the FDOC argues Dr. Kupers's opinions are unreliable because they are based on "a summary of studies," Dr. Kupers testified that he cited the summary in a footnote of his report merely "to reference how other experts have discussed the same [topics]" as him. *Id.* at 86. He did not say he reached his opinions based solely on the summary. *Id.* On the contrary, he explained his opinions are informed by his own research, research conducted by others, and by "read[ing] … extant literature in the field." *Id.* at 95. Dr. Kupers also testified that his "research is valid … and is recognized as such in the profession." *Id.* The FDOC points to no evidence to the contrary.

The FDOC also takes issue with Dr. Kupers's reliance on the National Commission on Correctional Health Care (NCCHC) in forming his opinions, contending Dr. Kupers could not say who founded the commission and does not know how many states have sought accreditation from it. *See* Doc. 391 at 12. Dr. Kupers explained at his deposition that the NCCHC is the "accrediting body for correctional facilities." *See* Doc. 391-2 at 42. According to Dr. Kupers, Florida "is not in compliance with [the] standards" set forth by the NCCHC and other associations, which "require the exclusion of people with mental illness from solitary confinement." *Id.* at 41-42. That Dr. Kupers could not say

who "accredited the NCCHC" or who founded it does not make his opinions unreliable. Indeed, Dr. Kupers stated the NCCHC is "prominent . . . . [and is] recognized by all departments of correction, even if [a] department of correction opts not to seek accreditation." *Id.* at 45. The FDOC points to no evidence to the contrary.[10]

Any criticisms counsel has about how Dr. Kupers formulated his opinions or the basis upon which those opinions rest may be explored on cross-examination. *See Daubert*, 509 U.S. at 596. And any objections to specific testimony that may be elicited at trial is best addressed when the evidence is proffered and in consideration of the other evidence already before the jury. Accordingly, the FDOC's motion will be denied.

### D.    FDOC's Hybrid Witnesses Drs. Greenfield & Emanoilidis

Plaintiff seeks to limit the testimony of the FDOC's non-retained experts Dr. Greenfield, a psychiatrist, and Dr. Emanoilidis, a clinical psychologist, who work within or for the FDOC. *See* Doc. 392 at 1. Plaintiff asserts two grounds for the relief requested: (1) the FDOC's disclosure does not comply with Rule 26(a)(2)(C); and (2) the witnesses intend to "testify beyond the scope of their observations and opinions made in the course of treating Plaintiff." *Id.* at 2-3.

---

[10] Even one of the FDOC's hybrid witnesses cites to the NCCHC as a source of relevant standards for clinicians in the corrections field. *See* Doc. 392-7 at 111-12, 253, 255 (deposition transcript of Dr. Emanoilidis).

Alternatively, Plaintiff argues the experts' proposed testimony is inadmissible under Rule 702 and *Daubert* as unreliable and unhelpful. *Id.* at 3. Plaintiff does not challenge the adequacy of either witness's credentials to opine on their "first-hand observations of Plaintiff [] made in the course of their treatment and based on the medical records they created and reviewed in providing that treatment." *Id.*

The proposed scope of the witnesses' testimony is set forth in the provided disclosure, which the Court will not reproduce here. *See* Doc. 392-1 at 6-7. Based on those summaries, the proposed scope of each witness' opinion testimony is fairly narrow. *See id.* The "summary disclosure" requirement under Rule 26(a)(2)(C) is not onerous, and courts are to "take care against requiring undue detail." Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment. Given Drs. Greenfield and Emanoilidis each testified at a preliminary injunction hearing,[11] *see generally* Docs. 392-8, 392-13, their own attorney clarified by email the scope of their expected expert opinion

---

[11] The parties should not interpret the Court's reference to prior testimony admitted without objection in a different procedural context to mean that all opinion testimony offered and accepted in that prior context will be admissible at trial under the applicable Federal Rules of Evidence. "[T]hat an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 851 (11th Cir. 2021) (emphasis in original) (quoting *Frazier*, 387 F.3d at 1261).

testimony, *see* Doc. 392-11 at 2, 4, and the witnesses explained the nature and scope of their opinions and the basis on which they formed those opinions at their respective depositions, *see generally* Docs. 392-7, 392-9, the Court finds that, even if the FDOC's disclosure is deficient, it is harmless.

Despite the FDOC's disclosure, *see* Doc. 392-1, upon review of Drs. Greenfield's and Emanoilidis's deposition transcripts, and given their attorney's clarification that their opinions will be limited to those "derived from [their] face-to-face interactions with [Plaintiff]," *see* Docs. 392-7, 392-9, 392-11 at 2, 4, the Court concludes it is not evident that the FDOC intends to elicit from Drs. Greenfield or Emanoilidis expert opinions beyond their personal knowledge and observations as informed by their years of experience in their respective fields. Moreover, given Dr. Emanoilidis's background and experience, including his many years working in corrections facilities, he appears perfectly qualified to offer *his* opinion about the quality of mental health care available to inmates at FSP. *See* Doc. 392-7 at 264-65. Whether his opinion is subject to debate does not make it inadmissible. The extent to which any such opinion may be relevant to the issues is best addressed in the context in which it is offered at trial.

As such, the Court concludes Plaintiff's motion is due to be denied. To the extent counsel for the FDOC attempts to elicit expert opinion testimony

from these witnesses at trial that are outside the bounds of their personal experience or knowledge, or beyond the types of opinions a treating physician may offer, opposing counsel can make appropriate, timely objections. And to the extent Plaintiff believes the witnesses' opinions are not "correct" or questionable, any perceived deficiencies may be explored or highlighted through "vigorous cross-examination" or the introduction of opposing expert opinion testimony. Finally, to the extent the FDOC intends to elicit opinion testimony from Drs. Emanoilidis or Greenfield that would be considered testimony of a "retained" expert, the Court can make a *Daubert* ruling in context at trial.

Accordingly, it is

**ORDERED:**

1.     Plaintiff's motion to strike the expert report and limit the testimony of Dr. Aufderheide (Doc. 389) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** to the extent that Dr. Aufderheide may not offer opinions he reached based solely on the timeline, including that Plaintiff has had unimpeded access to necessary mental health care in the FDOC, that Plaintiff "possibly … may be malingering his symptoms," that Plaintiff may be self-harming for secondary gain (or for "instrumental" reasons), or that Plaintiff's mental health providers have (or appear to have) properly,

accurately, or appropriately diagnosed him. The motion otherwise is **DENIED** substantively (as to timeliness) or as moot (as to Dr. Aufderheide's purported opinions regarding Plaintiff's gang affiliation, Plaintiff's dangerousness, Plaintiff's presumed financial incentive, and prior litigation/settlements).

2.    Plaintiff's motion to limit the testimony of the FDOC's non-retained employee experts, McLaughlin and Kirkland (Doc. 390) is **GRANTED in part**, **DENIED in part**, and **DEFERRED in part**. The motion is **GRANTED** to the extent McLaughlin may not offer expert testimony on matters outside his admitted areas of expertise, that are based purely on speculation or conjecture without factual foundation, or that are within the jury's province, including inmate discipline and security, mental health, ACA accreditation, or whether CM housing is "constitutional." The Court **DEFERS** a ruling on Plaintiff's request that McLaughlin be prohibited from testifying about Plaintiff's classification status, the privileges he received in CM, or incident/disciplinary reports Plaintiff incurred. The motion is **GRANTED** to the extent that Kirkland may not offer opinion testimony on the FDOC's security policies compared to those of other states or that Plaintiff is a violent person whose CM placement is warranted.

3.    The FDOC's motion to exclude expert testimony of Plaintiff's expert Dr. Terry Kupers (Doc. 391) is **DENIED**.

29

4.      Plaintiff's motion to limit the testimony of the FDOC's non-retained experts Drs. Greenfield and Emanoilidis (Doc. 392) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of July 2023.

_____

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record