[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12424

Non-Argument Calendar

_____

WILLIAM H. MELENDEZ,

                                        Plaintiff-Appellee,

*versus*

SECRETARY OF THE STATE OF FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

                                        Defendants,

BARRY REDDISH,
Warden of Florida State Prison,
ERIC HUMMEL,
Regional Director,
JOHN PALMER,

2                    Opinion of the Court                    23-12424

Assistant Regional Director,
P. HUNTER,
Classification Officer,
KEVIN TOMLINSON,
Classification Supervisor, et al.,

                                        Defendants-Appellants.

————————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cv-01023-BJD-JBT

————————————————

————————————————

No. 23-12685

Non-Argument Calendar

————————————————

WILLIAM H. MELENDEZ,

                                        Plaintiff-Appellee,

*versus*

WARDEN, FLORIDA STATE PRISON, et al.,

Defendants,

ROBERT BROWN,
WILLIAM HALL,
DANIEL PHILBERT,
Correctional Officers,

Defendants-Appellants.

————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cv-01023-BJD-JBT

————————————

Before ROSENBAUM, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

This appeal invites us to decide whether various officials employed by the Florida Department of Corrections (the "FDC") are entitled to summary judgment based on qualified immunity. The FDC officials (collectively, the "Defendants") appeal the denial of their summary judgment motion, in which they asserted qualified immunity as to William Melendez's 42 U.S.C. § 1983 claims that they subjected him to unconstitutional conditions of confinement. The district court denied summary judgment because it

determined that the record raised a genuine issue of material fact. Because the Defendants' appeal hinges on issues of evidentiary sufficiency, which we lack interlocutory jurisdiction to review, we dismiss this appeal.

## I.      BACKGROUND

Before his release from prison in February 2024, Melendez, now sixty-four-years-old, was an inmate of the Florida penal system.[1] While incarcerated in 2021, he filed a second amended complaint for damages and injunctive relief against the Defendants, the FDC and other state officials.  Melendez brought claims under § 1983, alleging violations under the First, Eighth, and Fourteenth Amendments, as well as violations of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

At issue in this appeal are Melendez's Eighth Amendment conditions-of-confinement claims against Defendants Davis, Hummel, Palmer, McClellan, Reddish, Hunter and Tomlinson (the "Managerial Defendants"); and Defendants Brown, Hall, and Philbert (the "Officer Defendants").

The conditions-of-confinement claims against the Managerial and Officer Defendants have been thoroughly litigated through preliminary injunction proceedings.  A previous panel of our Court affirmed the district court's entry of a preliminary injunction, finding that the district court did not clearly err in determining that

---

[1] Melendez's brief notes that he was released from prison in February 2024 but that he remains on mandatory supervised release until September 2024.

Menendez was likely to succeed on the merits of his Eighth Amendment claim. *See Melendez v. Sec'y, Fla. Dep't of Corr.*, 21-13455, 2022 WL 1124753 (11th Cir. Apr. 15, 2022) ("*Melendez I*"). The factual allegations that are relevant to this appeal remain largely the same as in *Melendez I*.

Melendez was first placed in FDC custody in October 2011. In his second amended complaint, Melendez claimed that, for much of his time in prison, the Defendants classified him as "Close Management" ("CM"), which FDC uses to isolate inmates that FDC has determined cannot remain in the general prison population without abusing the rights and privileges of others. *See Melendez I*, 2022 WL 1124753, at *1. Melendez also claimed that he was kept in "CM I," the most restrictive level of CM. *Id.* He alleged that the Defendants, through their CM-related practices and policies, subjected him "to a substantial risk of serious harm and deprived him of the minimal civilized measure of life's necessities and basic human dignity by exposing him to excessive periods of isolation in deplorable conditions." *Id.* And he alleged that the Defendants knew of these deprivations but remained deliberately indifferent to them by failing to respond in a reasonable manner, in violation of the Eighth Amendment. *Id.*

Following our decision in *Melendez I* and after extensive discovery, the Managerial and Officer Defendants moved for summary judgment on all counts, arguing, among other things, that they were entitled to qualified immunity on Melendez's Eighth Amendment claim. Of relevance to this appeal, the district court

denied the summary judgment motions on Melendez's Eighth Amendment claim after concluding that a reasonable jury could find that the Managerial and Officer Defendants knowingly subjected Melendez to conditions of confinement that were clearly established to be unconstitutional.

Both sets of Defendants then filed interlocutory appeals, which we consolidated for review.

## II.    STANDARDS OF REVIEW

"We review *de novo* a district court's denial of summary judgment based on qualified immunity, applying the same legal standards that governed the district court." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).  This requires us to construe the evidence and draw all inferences in the light most favorable to the plaintiff. *Id.*  We also review our jurisdiction *de novo*. *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 848 (11th Cir. 2022).

## III.    ANALYSIS

"We have a threshold obligation to ensure that we have jurisdiction to hear an appeal." *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020).  When qualified immunity is denied at summary judgment, "the type of issue involved" determines whether we have interlocutory jurisdiction. *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000).  When an appellant raises "core qualified immunity" questions, which involve legal issues underlying the analysis, we have jurisdiction over the appeal. *Id.* (quoting *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996)).  But we lack jurisdiction when the "issue presented in the qualified immunity

context challenges only sufficiency of the evidence relative to a 'predicate factual element of the underlying constitutional tort.'" *Id.* at 1296 (quoting *Dolihite v. Maughon ex rel. Videon*, 74 F.3d 1027, 1033 n.3 (11th Cir. 1996)). These cases "are not immediately appealable final decisions since they involve the determination of 'facts a party may, or may not, be able to prove at trial.'" *Id.* (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)).

Our traditional framing of the two components of the qualified immunity analysis illustrates how to distinguish between cognizable issues on appeal and those which we lack jurisdiction to review:

> First, what was the official's conduct, based on the pleadings, depositions, and affidavits, when viewed in the light most favorable to the non-moving party? Second, could a reasonable public official have believed that such conduct was lawful based on clearly established law?

*Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1286–87 (11th Cir. 2000) (quoting *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996)).

The second issue is a pure question of law, and its resolution constitutes a final order that is immediately appealable. *Id.* When such a ruling is appealed, we may also address the first issue, one of fact, "because it is part of the core qualified immunity analysis." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, (1987)). If only the first issue is appealed, though, we have no jurisdiction to hear the case. *Id.*; *see also English v. City of Gainesville*, 75 F.4th 1151, 1155–56 (11th Cir. 2023) ("Our precedents 'establish only that a

plaintiff may not base an interlocutory appeal on the district court's first determination by itself. . . . When both core qualified immunity issues are involved, we have jurisdiction for de novo review.'" (alteration adopted) (quoting *Koch*, 221 F. 3d at 1296)).

In light of these standards, we lack jurisdiction to entertain this appeal.  Although largely presented under the guise of a legal challenge, the Defendants' arguments turn entirely on a dispute of the district court's factual inferences, rather than on its conclusions of law.  The Managerial and Officer Defendants present similar, though not identical, arguments.  We address each group of Defendants in turn.

### A.

To explain why this appeal involves challenges based only on evidentiary sufficiency, we begin with a brief overview of the relevant law.   Melendez's conditions-of-confinement claim requires an objective and a subjective showing.  *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).  Under the objective prong, he must show "a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities.'"  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  As to the subjective prong, he must demonstrate that each official had a "sufficiently culpable state of mind."  *Id.* (quoting *Farmer*, 511 U.S. at 834).  On appeal, the Managerial Defendants argue that Melendez failed to satisfy either prong.

Regarding the objective prong, the Managerial Defendants dress their arguments in legal garb, but careful review reveals a

dispute of fact. For instance, they contend that Melendez's conditions of confinement did not amount to a constitutional violation because the district court erroneously determined that CM equates to solitary confinement—and determining what constitutes solitary confinement is a legal question that grants us jurisdiction. But this baldly mischaracterizes both Melendez's claim and the district court's order.

Whether CM is properly classified as solitary confinement or something lesser, like administrative segregation, matters not. Indeed, neither "administrative segregation" nor "solitary confinement" is independently sufficient to support a conditions-of-confinement claim. *See Sheley v. Dugger*, 833 F.2d 1420, 1428–29 (11th Cir. 1987). But Melendez's claim, and the district court's denial of qualified immunity, was not solely based on Melendez's placement in CM. Rather, it was based on a combination of conditions, including the length of time that Melendez was kept in CM, the deprivation of Melendez's right to exercise, the deprivation of his right to shower, and the impact that these deprivations had on his mental illness.

The Managerial Defendants do not raise any legal arguments premised on the undisputed facts, but rather dispute the district court's factual conclusions themselves. There is, therefore, no question of law for us to consider as to the objective prong. *See Stanley*, 219 F.3d at 1286–87.

As to the subjective prong, the Managerial Defendants' arguments fare no better. They contend that Melendez cannot show

"actual personal involvement or policy decisions which would jus-
tify a finding that [the Managerial Defendants] were responsible for
[Melendez's] alleged unconstitutional conditions," including "that
it was the decision of [the Managerial Defendants] to place [Melen-
dez] in the alleged unconstitutional conditions." But these argu-
ments directly contradict the district court's findings of fact.

      "Whether a particular defendant has subjective knowledge
of the risk of serious harm is a question of fact." *Goebert v. Lee
County*, 510 F.3d 1312, 1327 (11th Cir. 2007). It can be demon-
strated by "inference from circumstantial evidence, and a factfinder
may conclude that a prison official knew of a substantial risk from
the very fact that the risk was obvious." *Id.* (quoting *Farmer*, 511
U.S. at 842).

      Here, the district court conducted an individualized analysis
as to each Managerial Defendant and determined that all of them
were repeatedly notified of Melendez's deprivations and how they
were affecting his mental health. For instance, Defendant Reddish,
the former Warden of Florida State Prison, signed at least three re-
sponses to grievances that Melendez sent to him. Reddish also
emailed others in response to a letter from Melendez's counsel that
alerted him to Melendez's prolonged isolation, his conditions
therein, and his severe mental illness. As another example, Defend-
ant Hunter, who was responsible for monitoring and reporting
signs of self-injurious behavior among prisoners, including Melen-
dez, also received a grievance notifying her of Melendez's contin-
ued placement in CM and its deleterious effects on his mental and

physical health.  And Defendants Reddish and Hunter were both part of Melendez's institutional classification team, which repeatedly decided to keep him on CM status.

In its order denying summary judgment, the district court recounted similar evidence as to every Managerial Defendant.  For example, the district court noted that Melendez sent Hummel and Palmer a letter in April 2019, in which he complained about staff abuse and long-term lockdowns—totaling 761 days—with no opportunity for recreation or socialization.[2]  Likewise, Melendez's lawyer sent a letter to Palmer's office in August 2020 complaining of the "troubling pattern of ongoing abuse" that Melendez was suffering, resulting in self-injurious behaviors.  Davis, too, received a letter from Melendez's lawyer in August 2021, detailing the conditions of Melendez's confinement, including staff abuse, shower deprivation, exercise deprivation, and his resultant physical and mental injuries.  As to McClellan, the district court noted that he received emails from Melendez's lawyer in July 2018 and August 2021 (the same correspondence as Davis).  The July 2018 letter stated that Melendez's "mental health ha[d] deteriorated substantially" since he was first placed in CM, and McClellan responded to that letter confirming that the complaints "ha[d] been documented" and that Melendez would be evaluated by medical and

---

[2] The district court noted that Hummel and Palmer both testified that they did not remember receiving this letter.  Of that, the district court concluded that whether Hummel or Palmer had subjective knowledge was a disputed fact for a jury to determine.

mental health staff.  The district court also concluded that McClellan "had first-hand knowledge of [Melendez's] confinement status," including the length of time he had been in CM, because "he chaired many of [Melendez's] CM review hearings" and had authorized various requests to suspend Melendez's phone, visitation, day room, and educational programming privileges.  Finally, as to Tomlinson, the district court determined that he was aware of Melendez's acts of self-harm and his refusal of several mental health evaluations, from which a reasonable jury could conclude Tomlinson had subjective knowledge of a substantial risk of serious harm.

Ultimately, the court found that Melendez had produced enough evidence for a reasonable jury to conclude that each Managerial Defendant was subjectively aware that Melendez faced a substantial risk of serious harm as a result of his confinement conditions.  As with the objective prong, the Managerial Defendants present no legal arguments on the subjective prong that fall within our interlocutory appellate jurisdiction.  *See Koch*, 221 F.3d at 1295.

On appeal, none of the Managerial Defendants' arguments in support of qualified immunity assert that, accepting the record as construed by the district court, they are still entitled to qualified immunity.  There is thus no question of law for us to decide because the Managerial Defendants only challenge "the factual inferences that the district court drew from a series of circumstances." *See Hall v. Flournoy*, 975 F.3d 1269, 1278 (11th Cir. 2020).  Because

their arguments rest on factual disputes, and not legal ones, we lack jurisdiction to consider them.

Finally, the Managerial Defendants also challenge the district court's decision not to consider certain evidence. We also lack interlocutory jurisdiction over that argument since it similarly does not concern any "core qualified immunity" issues and does not involve "the application of established legal principles to a given set of facts." *See Koch*, 221 F.3d at 1296. And we may not exercise pendent jurisdiction over this evidentiary determination either, because we have concluded that we lack jurisdiction over the Managerial Defendants' underlying qualified immunity challenge. *See King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1379–80 (11th Cir. 2009) (finding that pendent jurisdiction can be exercised over non-appealable issues when they are "inextricably intertwined" with a decision that we do have jurisdiction to review).

## B.

Like the Managerial Defendants, the Officer Defendants argue only that there is no objective violation based on a dispute of the record—in other words, they raise factual challenges, not legal ones. For instance, they contend that Melendez's summary chart documenting his showers was not entirely accurate and that Melendez had no outdoor recreation because he had a pattern of behavior in which he refused it. As the district court noted, though, the parties' disagreement "over the reason" that Melendez did not receive showers or outdoor recreation presents questions for the jury. The district court found that Melendez's evidence showed

that he was repeatedly denied showers and that he had no outdoor recreation during the four years that he was held in restrictive CM. The Officer Defendants make no argument that, on those facts, Melendez fails to show a deprivation that is sufficiently serious to violate the Eighth Amendment.

As to the subjective prong, the Officer Defendants present a closer call, but their challenges still turn on the sufficiency of the evidence rather than abstract questions of law.

As an initial matter, Melendez acknowledges that the Officer Defendants never personally denied him outdoor recreation or showers. Rather, he claims that the Officer Defendants were responsible for supervising his wing and documenting or reviewing his housing logs, which recorded any time that he left his cell, and that they failed to stop subordinates from acting unlawfully.

The district court determined that the evidence showed that Officers Brown, Hall, and Philbert worked exclusively or often with CM inmates and all recognized that they were responsible for documenting or reviewing inmate movement on housing logs. In addition, each Officer Defendant worked a significant number of shifts during which the deprivations of Melendez's rights to outdoor recreation and regular showers occurred. From this, the district court found that Melendez produced enough evidence to create a genuine issue of material fact as to whether the Officer Defendants, in their supervisory roles, subjectively knew of the risk of serious harm and failed to respond in a reasonable manner.

The Officer Defendants claim that the district court "erroneously determined that there is a 'reasonable inference' that [they] were deliberately indifferent under the subjective prong." To challenge the court's conclusion, however, they contest the sufficiency of the evidence, arguing that *the record does not show* that [they] actually knew about a risk of serious harm or disregarded that risk." Similarly, they suggest that there is "no evidence" that Sergeants Philbert or Hall "ever denied Melendez showers or had knowledge that [Melendez] was allegedly being denied." In essence, the Officer Defendants ask us to review whether the district court correctly found that there was a genuine dispute about whether they knew of Melendez's conditions, and whether a reasonable jury could believe Melendez's story. This is precisely the type of challenge that we lack jurisdiction to review at this stage. *See Flournoy*, 975 F.3d at 1277.

To be sure, the Officer Defendants cast some of their evidentiary challenges as issues of law. The closest the Officer Defendants get to a legal argument is their contention that the district court never conducted an individualized analysis as to each defendant's independent causal connection to the constitutional harm, as they contend is required under *Saunders v. Sheriff of Brevard County*, 735 F. App'x 559 (11th Cir. 2018). But this, again, is a factual argument repackaged as a legal one, because what the Officer Defendants actually dispute is whether "evidence in the record exists that [the Officer Defendants] directed anyone to act unlawfully or not provide showers or recreation" or whether "there was a custom or policy instituted by [the Officer Defendants] that resulted in

deliberate indifference to Melendez's constitutional rights." But the Officer Defendants had to pivot to this factual argument because the district court's order shows that it did, in fact, consider the time that each individual Officer Defendant spent supervising Melendez's wing during weeks where Melendez was deprived of showers or outdoor recreation. The district court also reviewed the depositions of each individual defendant and determined that each Officer Defendant recognized that: (1) inmates have rights, and not merely privileges, to regular showers and outdoor recreation; and (2) they were responsible for documenting or reviewing Melendez's housing logs which recorded any time Melendez left his cell to exercise or shower. We therefore conclude that, as to causation, the Officer Defendants failed to raise a legal question sufficient to invoke our interlocutory jurisdiction.

Unlike the Officer Defendants here, the defendant in *Saunders* accepted the facts as construed in the plaintiff's favor and argued that the conduct still did not amount to deliberate indifference as a matter of law.[3]  *See* 735 F.3d at 569.  The Officer Defendants, in contrast, never accept the facts in the light most favorable to Melendez. Instead, they directly challenge the factual inferences that the district court drew from the evidence. For example, they contend that there is no causal connection because none of them

_____

[3] We note, too, that *Saunders* is an unpublished case that does not bind us in any event. *See Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1109 (11th Cir. 2016) ("In this Court, unpublished decisions, with or without opinion, are not precedential and they bind no one.").

directly dealt with Melendez and his recreation or exercise, and they were not aware of any grievance or complaint related to his recreation.  This is different from arguing that reasonable public officials could have believed that their conduct, as construed by the district court, was lawful based on clearly established law.  *See Flournoy*, 975 F.3d at 1278 (finding that we lack interlocutory jurisdiction when appellants merely claim that they "didn't do" the conduct at issue).

Like the Managerial Defendants, the Officer Defendants never argue that they are entitled to qualified immunity even if we accept that they repeatedly reviewed Melendez's housing logs which showed that he was deprived of outdoor recreation and regular showers.  If that was their argument, then we would have jurisdiction.  Instead, they argue that Officer Hall did not review daily housing logs, that Officer Brown never dealt with recreation while working on Melendez's wing, and that Officer Philbert had very few time periods in which he oversaw Melendez's wing.  As in *Flournoy*, these arguments equate to the appellants claiming that they "didn't do it," which precludes appellate review.  975 F.3d at 1278 (quoting *Johnson*, 515 U.S. at 316).

## C.

In sum, both the Managerial and Officer Defendants fail to argue that the district court erred in denying qualified immunity when the facts are construed in Melendez's favor.  But at this interlocutory juncture, we only have jurisdiction if we accept the factual inferences that the district court drew from the evidence.  *See id.*

("[T]o review that [factual] determination now would amount to nothing more than weighing the evidence supporting the district court's summary judgment determination, which is precisely what the Supreme Court has said we cannot do at this interlocutory stage.").

In its order denying summary judgment, the district court properly resolved the disputed facts in Melendez's favor, and then explained how the disputed facts and evidence could allow a reasonable jury to find that both Managerial and Officer Defendants violated Melendez's Eighth Amendment rights.  Specifically, the court found that the evidence showed Melendez had been confined in restrictive CM for the vast majority of a five-year period, received little to no outdoor recreation time for years, and often was denied the  three showers per week required under Florida Administrative Code.  On appeal, Defendants do not accept the facts as construed by the district court and argue that those facts still do not amount to a violation of a clearly established right.  Rather, they dispute the district court's findings as to the conditions of Melendez's confinement.  For instance, they argue that extended time in CM is not alone a constitutional violation.  But this fails to address that the district court's order was based on its finding of a combination of conditions.  They also argue that there is no evidence that they were responsible for Melendez's conditions, either because they didn't know or because they appropriately addressed his concerns such that they did not violate clearly established law.  But the district court concluded that there was sufficient evidence of their knowledge and responsibility.  And the district court determined

that the parties' disagreement "over the reason" that Melendez was deprived of the showers and outdoor exercise to which he was entitled are questions for the jury.  We agree.

## IV.   CONCLUSION

Because the Defendants have attacked only the "evidentiary sufficiency" supporting Melendez's claims and the Defendants' entitlement to qualified immunity, *see English*, 75 F.4th at 1156, we dismiss this appeal for want of appellate jurisdiction.

**DISMISSED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 20, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  23-12424-HH   ; 23-12685 -HH
Case Style:  William Melendez v. Donald Davis, et al
District Court Docket No:  3:20-cv-01023-BJD-JBT

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered
today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP
41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time
for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in
the clerk's office within the time specified in the rules. **A petition for rehearing must include
a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th
Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the
Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39
and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any
objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation via the eVoucher system no later than 45 days after issuance of the mandate or
the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers
General Information:    404-335-6100        Attorney Admissions:           404-335-6122
Case Administration:   404-335-6135        Capital Cases:                 404-335-6200
CM/ECF Help Desk:      404-335-6125        Cases Set for Oral Argument: 404-335-6141

OPIN-1 Ntc of Issuance of Opinion